HICKS *vs.* HICKS AND NORRIS.—*December,* 1832.

A mortgagee may become the purchaser of the equity redemption, if he does not make use of his incumbrance to influence the mortgagor to part with the estate for less than its real value.

Where the relation of mortgagor and mortgagee exists, and the latter purchases from the former his equity of redemption, worth from $2000 to $2500 for $1600, this is not such an inadequacy of price, as to induce a Court of Equity, in the absence of corroborative proof, to impeach the sale as unfair. It is a circumstance to be weighed in the consideration of the subject, but it is not, unsupported, to overbalance other facts indicating an honest negotiation between the parties.

An instrument or defeasance executed by the grantee, at the time of the execution of an absolute conveyance to him, for reconveyance to the grantor on his paying a sum of money, may constitute the transaction a mortgage; but such an instrument does not always operate that effect.

The character of the transaction must in every case depend on the inquiry, whether the contract is a security for the re-payment of money. If it is, the parties are in the relation of mortgagor and mortgagee. If it is not, the transaction must take the stamp of a conditional sale.

A case of conditional sale.

APPEAL from the Court of Chancery.

The present bill was filed by the appellant, *Elijah Hicks*, against the appellees, *Charles G. Hicks* and *Thomas A. Norris*, on the 23d of May, 1828.

The complainant alleged, that in the year 1818, he borrowed from the appellee, *Charles G. Hicks*, the sum of $500, for which he was to pay an interest at the rate of nine *per centum per annum*, and that he gave his bond or note, for the amount of the loan. That some time in April, 1824, the said *Charles G.* called on complainant for payment, and being unable then to pay either principal or interest, he agreed to give him a mortgage on a lot of ground in the city of *Baltimore*, of which he was seized, and accordingly on the 8th of the same month, he executed such an instrument, and at the same time, paid said *Charles*, the sum of $106 36 in part of the debt. That notwithstanding the recital in said mortgage, that the mortgagor had given the mortgagee his bond for $1244 32, without interest for two years, yet the only debt due from him to said mortgagee, was for the before mentioned loan in 1818, with interest thereon, and the further sum of $90, advanced by him for complainant, in payment of certain ground rents. That in May, 1826, he mortgaged the same property to *Thomas A. Norris*, (the other appellee,) for the sum of $800, which debt he has since reduced to $400. That the said *Charles G.* gave his notes to *Norris* for the amount; and then, on the 21st of June, 1826, taking advantage of his infirmities and necessities, induced complainant to execute to him an absolute deed for the property, without any other, or fur-

ther consideration, than what is already mentioned; and which is much below the actual value of the property. That complainant however, refused to execute the deed, until the grantee (the said *Charles*,) signed a paper, sufficiently showing, that although absolute in its terms, it was only intended to operate as a mortgage. That nevertheless, the said *Charles* now insists upon holding said property as his own, and denies the right of complainant to redeem the same, or to recognize any interest in him thereto. *Prayer*, that the deed of the 21st of June, 1826, may be decreed to be what it was designed to be, a mere security for the payment of money; that the mortgaged premises may be sold ; and an account taken of the rents and profits received by the defendant, *Hicks*. That the sums really due him and *Norris*, may be paid out of the proceeds thereof; the residue to the complainant, and for general relief.

The answer of *Charles G. Hicks*, denied that he ever loaned complainant money at usurious interest, but that in the year 1818, and from time to time, for several years afterwards, he advanced for his accommodation divers sums of money, and was also in the habit of selling him a variety of articles, and that during all this period, they were accustomed to liquidate their accounts, at the end of each year, including interest upon his advances, for the accommodation of the complainant, at the rate of six *per cent. per annum*, and for the balance so found due him, he was in the habit of taking complainant's note, bearing legal interest. That at the end of each succeeding year, they settled in the same manner, when the old note would be given up, and a new one taken for the whole balance then due. By adjustments of their accounts in this way, the claim of this defendant was justly increased from time to time, until the year 1824, when the amount being considerable, he pressed for security, and the complainant agreed to give him the mortgage spoken of in the bill, payable in two years,

when the whole amount due him, with interest added to that time was $1244 32, and the mortgage was accordingly executed. That at the expiration of the two years, the whole of the mortgaged debt being due, except the small sum of $160 36, which was paid at the time of its execution; and the sum of $400 being due in the mortgage to *Norris*, the complainant, in the month of June, in the year 1826, proposed to sell this defendant his equity of redemption in the said mortgaged premises, in consideration of his paying the debt to *Norris*, and advancing the complainant some hundred or two dollars, in addition to the debt due from him to the defendant, on mortgage as aforesaid—and the defendant consenting thereto, the deed of the 21st of June, 1826, was accordingly executed, and delivered to him by the complainant. That subsequently being urged so to do by the complainant, he agreed to sell him the same property at any period within two years, for the same consideration as is mentioned in the deed last referred to, and in the meantime, that he should remain in possession as defendant's tenant, at a rent of $125 per annum, and a paper to that effect was signed by him. The answer denies that this latter contract had any thing to do with the deed from complainant, or formed any part of the consideration for the execution of the same; or that complainant refused to sign said deed, unless the defendant would give him a written acknowledgment, that it was to be regarded as only a mortgage. The answer on the contrary avers, that there never was such a contract written or oral. The answer also denies that defendant took advantage of the necessities and infirmities of the complainant, or that the consideration for the property was inadequate. It further states, that on the 24th of August, 1826, the complainant finding that he should not be able to .repurchase the property, released his right to do so, and signed and delivered to defendant a paper to that effect, and delivered him the entire possession; since when, the defendant has held and enjoyed the undisturbed possession thereof, and has considered himself the

unqualified owner of the same. *Norris* by his answer admits the payment by *Charles G. Hicks* to him, of the $400 due on his mortgage from complainant. The deed of the 21st of June, 1826, which is exhibited with the bill, recites the mortgage of the 8th of April, 1824, from the complainant to *Charles G. Hicks,* and that the debt therein mentioned is due and unpaid, to wit, the sum of $1244 32, and that in consideration thereof, complainant had agreed to sell and convey absolutely to defendant, the mortgaged premises, subject to the payment by him, of the debt to *Norris,* &c. By the terms of this deed, the complainant conveys to the defendant *Hicks,* an absolute fee simple estate in the property in controversy.

The paper signed by the defendant, on the day of the execution of the above deed, is in these words:—
"1826, June 21st. I do agree with *Elijah Hicks,* that at the end of two years from this date, by *Elijah Hicks,* or his heirs, paying to *Charles G. Hicks* or his heirs, the sum mentioned in the deed; the said *Charles G. Hicks,* or his heirs, is to execute a deed to the said *Elijah Hicks* or his heirs, on the property contained in the said deed."
"N. B. The said *Elijah* is to pay *Charles* $125 per year."

One of the exhibits filed with the answer, is the release of the complainant of the 24th of August, 1826. It is as follows:—"I release all my right and claim of the house in town, that I have deeded to *Charles G. Hicks,* and give him possession."

Proof was taken under a commission, but it is so far adverted to in the opinion of the Chancellor, and of this court, as to render its introduction by the reporters unnecessary.

Bland, Chancellor, (March Term, 1830.)
The second mortgagee, *Thomas A. Norris,* has been made a defendant, but as he has by his answer acknowledged himself satisfied, and disclaims all further interest in this

controversy, I shall, in the observations I have to make upon this case, pass him by as if he were in fact no party to it.

There can be no doubt, that these parties, *Elijah* and *Charles*, at one time stood in the relation to each other of mortgagor and mortgagee; but on the 21st of June, 1826, with a full knowledge of their situation, they put an end to that relationship, and by the express terms of several instruments of writing, and their unequivocal acts, assumed the position towards each other, of vendor and vendee, with a condition to re-convey, on the payment of a specified sum of money, within a certain time. It appears that they met together, for the purpose of adjusting the claim of the defendant, *Charles*, upon the plaintiff, which was then secured, by a mortgage upon a house and lot, in the city of *Baltimore*, which the plaintiff had subsequently mortgaged to *Thomas A. Norris*, to whom there was then due the sum of $400, and after much conversation upon the subject, the deed of the 21st of June, 1826, was voluntarily and deliberately executed and delivered, which deed recites, &c.; and on the same day and time, or very soon after the delivery of the said deed, another instrument of writing was executed, and delivered by the defendant *Charles*, to the plaintiff, in these words:—"1826, June 21st.—I do agree with *Elijah Hicks*, that at the end of two years from this date, by *Elijah Hicks*, or his heirs, paying to *Charles G. Hicks*, or his heirs, the sum mentioned in the deed, the said *Charles G. Hicks*, or his heirs, is to execute a deed to the said *Elijah Hicks*, or his heirs, on the property contained in said deed."—"N. B. The said *Elijah Hicks* is to pay *Charles* $125 per year."

The plaintiff then had possession of the property, but on the 24th of August, following, he executed and delivered an instrument of writing to the defendant *Charles*, which is in these words: "I release all my right and claim of the house in town, that I have deeded to *Charles G. Hicks*, and give him possession"—and at the same time, or soon after,

gave up the entire possession of the property to the defendant, *Charles G. Hicks*.

Considering the contract between these parties, as thus manifested by their acts and writings, it can only be regarded as a conditional sale, and not as a mortgage; since it is clear, that they intended to make a substantial alteration in the contract, which had, until then, subsisted between them; to put an end to it as a mortgage, and to make it in all respects an absolute sale, saving only to the vendor a power to re-purchase within two years, on the re-payment of the purchase money, without its being reciprocated by any covenant or obligation, upon which the defendant *Charles*, could sue for, and recover the amount which he had advanced, and thus divesting it of the principal and necessary characteristic of a mortgage.

But it has been urged, that the plaintiff was imposed upon and defrauded. The bill charges, that the deed of the 21st of June, 1826, was only intended as a mortgage. That the defendant *Charles* took advantage of the necessitous situation, and infirmities of the plaintiff, and of the situation in which they stood. That the property is worth infinitely more money than the whole amount of that, which by his last contract was stipulated by the defendant, *Charles*, to be paid for it, and that it was worth at least, $2000. All which is denied by the answer of *Charles G. Hicks*, and there is no proof which at all sustains the bill in opposition to that answer, except as to the value of the property. The plaintiff may have been without a sufficiency of money, or property, to pay all his just debts, and so far in a necessitous situation; but there is nothing in this case, which shows that the circumstances of poverty were so brought to bear upon him, or were then so urgently pressing upon his mind, as to prevent or overrule the sound and fair exercise of his judgment. It is charged that the defendant, *Charles*, took advantage of the plaintiff's infirmities. It is presumed that the plaintiff, by this allegation, alludes to some mental infirmity, with which he was then afflicted;

because it is well known, that this court only interposes to prevent those who are intellectually imbecile, from being taken advantage of, by having their weakness in that respect fraudulently practised upon; but never interferes with the mere bad bargains of men of sound and free minds. There is no explanation to be found, either in the pleadings, or in the testimony, of what is exactly meant by the plaintiff's infirmities, as thus spoken of. Whether he was subject to any constitutional, bodily, or mental infirmity of a general or periodical nature, or whether his infirmity originated from his own vicious habits, or from any other cause; nor is there any evidence of his having been at that, or any other time afflicted with any mental imbecility whatever. It is true, that gross inadequacy of consideration may be an evidence of fraud, yet that will not itself, and alone, be deemed a sufficient ground on which to pronounce any contract void, which has been made freely, and without mistake, between parties of sound mind. But although it may be admitted that this plaintiff has not made so advantageous a bargain as he might have done, yet there is no evidence of fraud or mistake.

It has been mainly urged, that the contract between the parties must be considered as a mortgage, and not as a conditional sale. In cases of this kind every thing depends upon what shall be deemed the intention of the parties. Where there are several distinct instruments of writing relating to the same subject, they must be all taken together, and the contract deduced from a fair construction of the whole; and evidence *dehors* the writing may be let in, not as a means of explaining, or construing them, but to show what was the real and true character of the whole contract; and if it appears to have been intended only as a mortgage security, the right of redemption will not be allowed to be fettered by any conditions disadvantageous to the mortgagor. If on the other hand, it is shewn to be an absolute sale, it will not be converted into a mortgage, merely because of a stipulation to re-convey, on the re-payment of the purchase money, within a certain time.

To constitute the relation of mortgagor, and mortgagee, it is essential that their remedies should be in all respects mutual. The one should have a right to redeem, and the other to foreclose, or sue for his money. For where an estate has been absolutely conveyed, there could be no equity in leaving it to be held at the risk of one party, and allowing the other whenever he thought proper, to treat it as a mortgage, and come for redemption, when the other party had no remedy for his money, which he could not sue for without a covenant to repay. 2 *Freem.* 70, 86, 144, 153. 1 *Vern.* 191, 268. 1 *P. Wms.* 269. *Forres.* 62. *Sel. Cas. in Ch.* 10. 2 *Cha. Rep.* 275. *Pre. Chan.* 95, 423. 2 *Atk.* 495. 3 *Atk.* 389. 2 *Sch. and Lef.* 393. 19 *Ves.* 413. 3 *Swan.* 631. *Co. Litt.* 205, *no.* 1. 1 *Wash.* 15, 125. 1 *Call.* 280. 2 *Call.* 521. 2 *Mun.* 40. 4 *Mun.* 140. 1 *Rand.* 121. 7 *Cran.* 219.

Upon the whole, taking the several instruments of writing together, as furnishing the only safe and unequivocal evidence of the contract, which these parties, *Elijah* and *Charles*, intended to make, I feel satisfied that it can only be regarded as a conditional sale; there being no reciprocity of remedies—and the right to call for a reconveyance, on the repayment of the purchase money, having been released and abandoned, the sale must now be deemed perfect, final, and conclusive in all respects.

**BILL DISMISSED WITH COSTS.**

From this decree the complainant appealed to this court.

The cause was argued before Buchanan, Ch. J., and Earle, Stephen, Archer, and Dorsey, J.

*Gill*, for the appellant contended.

1. That in April, 1824, the relation of mortgagor and mortgagee, existed between *Elijah* and *Charles* *G. Hicks*. 2. That up to 24th August, 1826, *Elijah Hicks* was in necessitous circumstances, and unable to pay *Charles G.*

*Hicks.* 3. That the property assigned to *Charles G. Hicks,* by *Elijah,* in June, 1826, was much more than sufficient to discharge the incumbrances upon it, including *Charles G. Hicks'* debt. 4. That *Charles G. Hicks,* when he took the absolute deed from *Elijah,* in June, 1826, then knowing his necessitous condition—that the property conveyed by it, was more than sufficient to pay all the claims upon it— giving a grossly inadequate consideration for the equity of redemption,—acknowledging still that *Elijah* had a right to redeem within a limited period,—having taken the release of the 24th August, without giving any considera- tion for that, must still be considered a mortgagee, and hold- ing the property conveyed to him, merely as a security. 5. That where the relation of mortgagor and mortgagee is once clearly established, a court of equity will not permit the creditor to take advantage of that relation, and procure from his necessitous debtor an absolute assignment of his equity of redemption, of great value, either without very clear, full, and irresistible proof, that an actual sale was intended, or a fair and full consideration paid; but will look through all the dealings, and hold the parties, in the absence of such proof, to their original relations of debtor and creditor. 4. That in this case, the idea that a sale was contemplated, is re- butted by the absence of any consideration paid for the right of redemption—by the fact that the consideration recited in the assignments is not the true and real consideration ; by the fact that the grantee did not go into immediate posses- sion, nor the grantor agree to pay any rent. 7. That there- fore the deed of June, 1826, was in equity a mortgage. 8. That *Elijah Hicks,* being obliged to come into a court of equi- ty to have the deed of June, 1826, decreed a mortgage, the court will, as essential to the settlement of all claims between the parties, order the property to be sold, an account to be ta- ken, and the mortgagor's debt paid. 9. That in this case, the answer of the defendant, being contradicted in material and substantial parts, is not to be considered as a bar to the re- lief sought, and comes within the rule, *falsus in uno, falsus in*

*omnibus.* 10. The bill being filed 23d May, 1828, and the right to redeem not expiring until 21st June, 1828, the complainant has not delayed asserting his rights so long, as to have forfeited the peculiar equities, which mortgagor's vendding their right of redemption to mortgagees have, to impeach such sales when a full consideration has not been paid, and resume their original relations. He cited 4 *Kent's Com.* 137. *Manlove vs. Ball and Burton,* 2 *Vern.* 84. *Am. Ch. Dig.* *Tit. Mort.* 343, 4, 5. 4 *Mun.* 141. *Co. Lit.* 203, (*b*) *no.* 1. *Conway's Ex'rs vs. Alexander,* 7 *Cranch.* 236.

No counsel argued for the appellee.

EARLE, J., delivered the opinion of the court.

A principle was adverted to in the argument, which will be taken as the basis of a part of our opinion in this case, without recurring to the case of *Hicks vs. Cooke,* 4 *Dows. Par. Cases,* 16, where it seems to have been controverted. It is, that the mortgagee may become the purchaser of the equity of redemption, if he does not make use of his incumbrance to influence the mortgagor to part with the estate, for less than its real value.

This principle we think was not infringed by *Charles G. Hicks,* in his purchase of *Elijah Hicks,* on the 21st of June, 1826. The mortgage money became due in April, 1826, and no steps to enforce payment, were either taken or menaced; nor were any indirect means used by him, that we can perceive, to influence the mortgagor to part with his equity of redemption. On the contrary, he appears to have entered into the agreement voluntarily, and uninfluenced by any consideration but that of parting with his estate for what he then supposed its value.

The purchase money was about $1600, and whether the house and lot in the city of *Baltimore,* were at that time worth more, is not ascertained by the testimony. Three years after, the greater part of the witnesses estimate them to be worth from twenty-two to twenty-five hundred dollars, but all are silent as to the fluctuations in price of property so

situated, and none determined whether it increased or di-
minished in value.    But let us suppose that the price was
stationary, and the mortgaged premises were of the value of
from twenty to twenty-five hundred dollars, in the year
1826, yet in our view, the $1600 given, would not be such
an inadequacy of price, as to induce us, in the absence of
corroborative proof, to fix on the transaction of sale, the
character of unfair dealing.    It is a circumstance to be weigh-
ed in the consideration of the subject, but it is not unsup-
ported, to over-balance many others, that indicate an honest
and fair negotiation between the parties.

Another ground taken in the argument was, that the in-
strument simultaneously executed with the absolute con-
veyance in the case, converted it into a mortgage, and that
it should have been treated as such in the Court of Chan-
cery.

That an instrument, or defeasance executed by the gran-
tee, at the time of the absolute deed, for re-conveyance to
the grantor, on his paying a sum of money, may constitute
the transaction a mortgage, is undeniably true; but that such
an instrument does not always operate that effect, is a pro-
position equally certain; 7 *Cranch*, 23.    The character of
the transaction must in every case depend on the inquiry,
whether the contract is a security for the re-payment of mo-
ney.  If it is, the parties are in the relation *of mortgagor* and
mortgagee; but if it is not, the transaction must take the stamp
of a conditional sale.    The transaction before us, we have
examined with every possible attention, and we cannot dis-
cover any thing in it, that has the appearance of its being
a security for the repayment of money, by *Elijah Hicks*, to
*Charles G. Hicks*.    On the contrary, we think it is very
clear that the parties designed it to be a sale, on a condition
to be performed  by *Elijah Hicks* and his heirs; if not con-
fining the performance to him and them.    This is the lan-
guage that both of them hold to the witnesses in the cause.
*Charles G. Hicks* told *Joshua Gorsuch*, that if the money
was refunded within the two years, he was bound to re-convey

the property to *Elijah Hicks* and his heirs, but he was un-
der no obligation to make a deed to any other person; and
*Elijah Hicks* informed *Abraham H. Price*, that the pro-
perty was not to pass out of the family, but that if he, *Elijah*,
could raise the money to pay for it, within two years, with-
out a sale, that his brother *Charles* had consented to let him
have it. And the instrument concurrently executed with
the absolute deed, seems to countenance the same idea, and
contains a provision that constitutes *Elijah Hicks* a tenant
of the premises, at a rent of $125 per annum. These stip-
ulations, and further attendant circumstances that might be
mentioned, are inconsistent with the interpretation insisted
on by the appellant, and make it manifest to us, that a secu-
rity for the repayment of money, was not contemplated by
the parties, and that the transactions between them of the
21st of June, 1826, must be considered as a conditional sale
by *Charles G. Hicks* to his brother.

DECREE AFFIRMED.