PEARSON CLARK
    vs.                    DECEMBER TERM, 1847.
LEVERING ET AL.

[MORTGAGE—ASSIGNMENT OF MORTGAGE DEBT.]

A BILL of sale, though absolute in its terms, is, in equity, considered as a mortgage wherever the object is to secure the payment of a debt, and not to transfer the title absolutely to the party to whom the conveyance is made.

Whoever may be the holder of the debt intended to be secured by the mortgage, will be considered, in equity, as the owner of the mortgage itself.

The debt and the mortgage are so inseparably united, the one being, in truth, appurtenant to the other, that a separate and independent alienation of them cannot be made.

[In February, 1846, Pearson Clark, the complainant, purchased of William Applegarth, a schooner, called the "Emily Ann," for the sum of $2100, and gave in payment, an old vessel valued at $500, and three drafts in favor of the vendor, drawn by said Clark, and accepted by the firm of Whittington & Snyder for his accommodation. To indemnify the said firm against any loss by reason of their acceptances, the schooner was conveyed to them by a bill of sale from Applegarth, with the understanding that they were to convey it to Clark, on payment of the draft by him. Clark failed to make any payments on these drafts, other than a small one of about a hundred dollars; and the residue of the first two, except $350 was paid by the acceptors. For this balance of $350,

a new acceptance was given by said Whittington & Snyder, of a draft of John W. Fowler in favor of Clark, and by him endorsed to the firm of B. Deford & Co. Whittington & Snyder afterwards failed in business ; and Frederick A. Levering and John C. Bridges having become their assignees, claimed to hold the schooner exclusively for the benefit of the general creditors of their insolvents, and advertised it for sale. The complainant filed his bill against them for an injunction, and prayed that the vessel might be sold under the direction of the court ; and the proceeds, after payment of the purchase money, assigned to him. A sale was subsequently made by agreement, and the case referred to the Auditor, who applied the proceeds, (after deducting the costs) *proportionally,* to the payment of the unsatisfied draft held by Applegarth ; of the one held by Deford & Co. ; and of the claim of the defendants on account of the payments made by their insolvents, (the proceeds being insufficient to pay them all in full,) Applegarth, and Deford & Webb, excepted to this account, because their claims were not allowed in full, instead of being placed on an equality with those of the defendants. Proof was offered at the same time to show that the draft held by Deford & Webb, constituted one of the claims against the schooner Emily Ann. The Auditor having stated another account dated 3d December, 1847, under the instructions of the complainant's solicitor, allowing said claims in full, the case came before the Chancellor, on the question of its ratification.]

THE CHANCELLOR :

There can be no doubt, that the bill of sale, though absolute in its terms, is in this court to be considered as a mortgage ; the object being to secure the payment of a debt, and not to transfer the title absolutely to the parties to whom the conveyance was made. *Hicks* vs. *Hicks,* 5 *G. & J.,* 75 ; *Dougherty* vs. *McColgan,* 6 *ibid.,* 275.

And it seems to me there can be as little doubt, that the debt intended to be secured, was that due the vendor of the vessel, and for which the bills were given ; and that the holders

of those bills must consequently, in a court of equity, be regarded as the mortgagees. The principle settled by the authorities appears to be this : that whoever may be the holder of the debt intended to be secured by the mortgage, will be considered in equity as the owner of the mortgage itself; that the debt cannot reside in one person, and the pledge in another; the former (the debt) being the principal, and the latter the accessory; and that, consequently, in whatsoever hands the debt is found, in the same hands will the mortgage also be found ; that the debt and the mortgage are so inseparably united, the one being in truth appurtenant to the other, that a separate and independent alienation of them cannot be made. *Jackson* vs. *Blodget*, 5 *Cowan*, 202; *Green* vs. *Hart*, 1 *Johns. Rep.*, 580; *Jackson* vs. *Hart*, 3 *Johns' Cases*, 322 ; *Pratt* vs. *Vanwick's ex'rs*, 6 *G. & J.*, 495.

It has been decided in Massachusetts, that where a negotiable note secured by mortgage, was negotiated without assignment of the mortgage, notwithstanding such separation of the note from the mortgage, the latter remained in force, and the mortgagee became a trustee for the holder of the note. *Crane* vs. *March*, 4 *Pick.*, 131.

But, it is said that Whittington & Snyder having accepted these bills solely for the accommodation of the complainant, and having made payments on account of them out of their own moneys, justice requires that they should at least be put on a footing of equality with the holders of the bills, and be paid rateably with them, out of the proceeds of sales, those proceeds being insufficient to pay the whole sum.

The effect of this would be, to put the general creditors of Whittington & Snyder, represented by their assignees, upon an equal footing with the holders of the bills.

But, why should this be so ? It is true, these parties did accept these bills for the accommodation of the complainant, Clark ; but it is equally true, they did mean to put themselves, and did put themselves, between the holders of the bills and loss. In truth, with reference to the holders of these bills, Whittington & Snyder as the acceptors became the principal

debtors, holding in their hands as security for the debt, and their indemnity, the mortgage upon the vessel.

With what propriety, then, can they or their assignees, representing their general creditors, say that the holders of these bills, for whose security the arrangement was made, shall participate with them in the loss resulting from a sale of the vessel for less than the amount which the complainant stipulated to pay for her. Though Whittington & Snyder were to be indemnified for their risk in accepting the bills, they certainly were to indemnify the holders of them ; and one of the instruments of indemnity was the mortgage upon the vessel, executed to them by the vendor Applegarth.

Suppose Whittington & Snyder had made no payment on the bills, but had other claims against the drawer ; and the contest was between their assignees, representing their general creditors, and the holders ; could there be a doubt in that case, that the proceeds of the sales would be awarded to the holders of the bills? But why so? why simply and exclusively because the mortgage to Whittington & Snyder was for their benefit, as the holders of the claims intended to be secured by it. But if the court in the case supposed, would award the proceeds to the parties holding the bills, in preference to the general creditors of Whittington & Snyder, why shall they not have the same preference, notwithstanding the partial payment made by those persons? They are, it is true, in respect of such partial payment, creditors of the fund ; but their claim upon it, or to be indemnified out of it, is subordinate to the claim of the holders of the bills, and must give way until they are satisfied in full. Such being my opinion, I shall pass an order ratifying the account of the Auditor, of the 3d instant, which is stated upon this view of the relative rights of the parties.

[No appeal was taken from this order.]