*EDWARD O. HINKLEY, Surviving Executor of **341** Leonard Jarvis, and Others *v.* JEREMIAH WHEELWRIGHT, Administrator *c. t. a.* of Nathaniel J. Wyeth.

*Decided June 27th, 1868.*

Mortgages and conditional sales; absolute deeds intended merely as security; intent of parties; relief in equity; purchase of equity of redemption by mortgagor.

In Equity, a conveyance, whatever form it may assume, will be treated as a mortgage, whenever it appears to have been taken as a security for an existing debt or a contemporaneous loan, and the inclination of the courts is, in doubtful cases, so to treat it, and allow the grantor to redeem. (a)                                    p. 348

There is no principle of Law or Equity which prevents parties, capable of acting for themselves, from making conditional contracts for the sale of their property, real or personal, or which forbids a vendor to make an absolute conveyance of the property sold, subject to an agreement, that he shall be entitled to a re-conveyance upon the repayment of the purchase money or any other sum certain, on or before a fixed day, or to make any other stipulations by which the conveyance shall become void, or remain absolute.                       p. 348

The fact that the parties stand in the relation of mortgagor and mortgagee, does not prevent their dealing with each other, as vendor and purchaser of the equity of redemption. Such transactions will not be set aside unless for manifest unfairness or inadequacy of consideration.
                                                        pp. 348-349

---

(a)   See cases cited in note (b) to *Farrell v. Bean,* 10 Md. 217.

See *Hicks v. Hicks,* 5 G. & J. 47; *Baugher v. Merryman,* 32 Md. 185; *Russell v. Southard,* 12 Howard, 154.

The intention of the parties is in such cases what the courts seek to discover and enforce; and to establish this, evidence *dehors* the instrument, of the circumstances under which it was given, or the object it was designed to fulfill, is admitted.                                          p. 349

As between grantor and grantee, where it appears that a conditional sale was a mere cloak to an irredeemable mortgage, equity will let in the grantor to redeem; but it is a matter of grave doubt, whether under such circumstances, it will afford the grantee a remedy for the debt against the grantor.                                                          p. 350

**342**      *The right to make contracts of conditional sale being conceded, no limitation can be placed on the conditions upon which the parties may choose to agree, fixing the contingency upon which the deed is to be void or to remain absolute.                               p. 355

Appeal from the Circuit Court of Baltimore City.

Proceedings were instituted in the Circuit Court of Baltimore City, for the settlement of the estate of Leonard Jarvis, deceased, under which certain property of the testator was sold. While the proceeds of sale, and certain rents and income, were in the hands of Edward Otis Hinkley, as trustee to sell, and as receiver of said rents and income, the said Hinkley as surviving executor, and certain other persons as residuary devisees and legatees of the testator, filed their petition in said cause on the 28th of December, 1859, alleging that Nathaniel J. Wyeth, of Cambridge, Massachusetts, being indebted to said Leonard Jarvis, in a large sum of money advanced upon a letter of credit, and expecting further loans, advances and facilities from him, in the month of August, 1851, executed to said Jarvis a mortgage of certain property in Massachusetts, and informed him of that fact by letter dated the 23rd of that month; that about the 2nd of March following, Wyeth wrote another letter to Jarvis, requesting him to release a portion of the mortgaged property, and by a letter dated about the 4th of that month, Jarvis agreed to do so; that accordingly Jarvis did release a portion of the mortgaged property, and thereupon he and Wyeth, executed four papers, all bearing date August 17th, 1852. (The petition then proceeded with a detailed description of these papers, which is here omitted, as their nature is fully set forth in the opinion of the court; it being sufficient to state here that by the first of these papers Wyeth conveyed to Jarvis by deed, in fee, certain property, being that part of the mortgaged property, which had not been released,  ·

and known as the Assabet Ice House; by the second Jarvis demised to Wyeth the said ice house and property so conveyed to him for the term of three years, afterwards extended to seven years more, *so as to terminate on the 1st of **343** January, 1862, at the yearly rent of $900, payable semi-annually; by the third it was agreed that said deed and lease were to constitute a mortgage only for the sum of $15,000, the original mortgage of said ice house property never having been released, and that Jarvis should have the power of sale upon the terms therein particularly mentioned; and by the fourth of said papers it was agreed that the balance due on the original mortgage, over and above the sum of $15,000, should be settled and paid by said Wyeth, in the manner therein particularly mentioned.)

The petition further stated that the instalment of interest on said $15,000, which accrued on the 15th of October, 1859, was due and in arrears, and in consequence of such default, the whole debt, principal and interest had become payable, and that payment thereof could be enforced at that time. That Jarvis, by his will, gave one-sixteenth part of his estate to Wyeth, and that Wyeth was also dead, having left a will appointing his wife executrix, and directing the sale of his interest in the real estate in Baltimore, and the application of the proceeds to the payment of his debts, and directing also his executrix to carry into effect the agreement with Jarvis, and to redeem the Assabet estate, if she thought proper; that the executrix mortgaged to Mr. Wyeth, of New York, her interest in Jarvis' estate—but that said mortgage was afterwards released, and the property re-conveyed to her by said Wyeth; that the share of Wyeth in the personal estate of Jarvis, is insufficient to pay the debt of $15,000 and interest, being only about $4,000—part of which was in money invested by Hinkley, the executor, and part in property; that administration in Maryland on the estate of Wyeth had been granted to Wheelwright, one of the defendants in this petition; that Wheelwright never had any assets, and if payment is to be made to him, he must apply it to pay Jarvis' debt; that the auditor in stating accounts of the real estate of Jarvis, allowed the distributive share of Wyeth, of Cambridge, in certain funds arising from income of real estate, to Wyeth, of New York, as

**344** mortgagee, (his estate, however, being re-conveyed *to the executrix of Wyeth, of Cambridge, she claims it, and so does Wheelwright, in their answers respectively;) and the petitioners claim that the fund should not be carried out of the State of Maryland, or out of the jurisdiction of the Circuit Court in which the fund was, and the whole interest of Wyeth, in both the real and personal estate of Jarvis being estimated at about $12,500. The petition then prayed the allowance of that sum to the payment of the debt and excepted to its allowance as stated in the auditor's account.

This petition was answered by Wheelwright, administrator of Wyeth, and he says he has no knowledge of the debt, and it is not due until 1862, and claims that by the provisions of the will of Wyeth, his share of the real estate of Jarvis became converted into personal property, and should go to him, Wheelwright, as administrator.

The petition was also answered by Mrs. Wyeth, of Cambridge, the executrix, who, after admitting the allegations of the petition, alleges the re-conveyance by Wyeth, of New York, to her of the share of Wyeth, of Cambridge, which she had assigned to him; and that the contract is a Massachusetts contract; and that the deeds referred to discharged said Wyeth from all personal responsibility; and that the effect of the contract, and the intention of the parties was, that Jarvis should rely for his security exclusively on the ice house; and charges that the Circuit Court had no jurisdiction to administer this fund and apply it for payment of this debt; and that the petitioners have not tendered a release of the mortgage; and the plea of the Statute fo Limitations is relied upon.

The other facts material to this appeal, are set forth in the opinion of the court.

The court below (Alexander, J.,) passed an order overruling the petition, and also the exceptions taken by the petitioners to the auditor's report, and from this order the present appeal is taken.

The cause was argued before Bartol, C. J., Nelson, Stewart, Miller and Alvey, JJ.

*Edward Otis Hinkley* and *I. Nevitt Steele*, for the **345** appellants:

The first point to be considered is, was there *any debt* here?

It is clear that there was. It arose from the fact that Jarvis having paid money for the use of Wyeth, at his request; and there was a personal liability of Wyeth to pay this debt. There is an express agreement to pay this debt; but even without that the law would have implied a promise to pay it. Had there been no such express agreement, it is well settled that wherever there is an indebtedness an action can be maintained to recover it, although there may be no express stipulation to pay. The law implies a promise to pay. *Yates v. Aston,* 4 Ad. & Ellis, N. S. 182, 196; *Ancaster v. Mayer,* 1 Brown Ch. 465; *Parsons v. Mumford,* 3 Barb. Ch. 152; *Elder v. Rouse,* 15 Wend. 219; *Palmer v. Gurnsey,* 7 Wend. 248; *Stevens v. Sherrod,* 6 Texas, 294; *Russell v. Southard,* 12 How. 152; *Flagg v. Mann,* 2 Sum. 534; *Post v. Mackall,* 3 Bland, 521; Coote on Mortgages, 1; *Clark v. Levering,* 1 Md. Ch. 179.

What was the effect of the papers of August 17th, 1852? It was not to release the personal liability; this could only be done by paying the debt, and those papers did not have the effect of paying the debt, unless the transaction was a sale and not a security, only in another form, for the payment of the debt. *Whitacre v. Fuller,* 5 Minn. 517.

Was the transaction, then, of August 17th, 1852, a conditional sale or a mortgage? For upon the determination of this question the whole case rests. The *indicia* or *criteria* of a mortgage, as distinguished from a conditional sale, appear in the following cases: *Bayley v. Bailey,* 5 Gray, 505; *Graves v. Graves,* 6 Gray, 391; *Woodman v. Pickett,* 8 Gray, 617; *Murphy v. Calley,* 1 Allen, 107; *Eaton v. Whiting,* 3 Pick. 492; *Rice v. Rice,* 4 Pick. 352; *Stocking v. Fairchild,* 5 Pick. 181; *Newhall v. Burt,* 7 Pick. 157; *Lanfair v. Lanfair,* 18 Pick. 299; *Lovering v. Fogg,* 18 Pick. 540; *Nugent v. Riley,* 1 Met. 117; *Dougherty v. M'Colgan,* 6 G. & J. 279; *Beatty v. Snook,* 5 Mich. 231; *Dow v. Chamberlin,* 5 McLean, 281; **346** *Russell v. Southard,* 12 How. 152; *Parsons v. Mumford,* 3 Barb. Ch. 152; *Marshall v. Stewart,* 17 Ohio, 356; *Brown v. Nickle,* 6 Barr, 390; *Babcock v. Wyman,* 19 How. 299; *Bosley v. Bosley,* 14 How. 396. See absolute conveyances treated as

mortgages in the following cases: *Bank of Westminster v. Whyte,* 1 Md. Ch. 536; *Clark v. Levering,* 1 Md. Ch. 178; *Thompson v. Banks,* 2 Md. Ch. 430; *Davis v. Banks,* 3 Md. Ch. 138; *Ing v. Brown,* 3 Md. Ch. 521; *Davis v. Stonestreet,* 4 Ind. 107; *Conway v. Alexander,* 7 Cranch, 219, 236.

In *Rich v. Doane,* 35 Vt. 129, there was no note, bond or other evidence of debt, and nothing was said about a loan, or debt, or mortgage; the whole talk was of a sale and purchase, and hence the transaction was held to be a conditional sale. See also *Enos v. Sutherland,* 11 Mich. 541; *Graham v. Stevens,* 34 Vt. 169; *Wilson v. Drumrite,* 21 Mo. 329.

As to the effect of the possession being retained by the grantor, see *Hicks v. Hicks,* 5 G. & J. 81.

In support of the doctrine, once a mortgage always a mortgage, see *Vanderhaize v. Hugues,* 2 Beasley, (N. J.) 245; *Newcomb v. Bonham,* 1 Vt. 8; *Clark v. Henry,* 2 Cow. 324; *Fillson v. Moulton,* 23 Ill. 656; *Davis v. Stonestreet,* 4 Ind. 104.

Courts do not regard conditional sales favorably. *Wilson v. Drumrite,* 21 Mo. 328; 7 Ves. 272; Hilliard on Mort. ch. 1, sec. 1.

*Arthur George Brown* and *George William Brown,* for the appellees:

The effect of the deed of conveyance from Wyeth to Jarvis of the Assabet estate, of the lease of said estate by Jarvis to Wyeth, and of the agreement between Jarvis and Wyeth, all of which papers are dated on the same day, and are to be construed together, was to release said Wyeth from all personal liability for the balance, $15,000, which remained unsettled as **347** *between Jarvis and Wyeth, of the original debt of six thousand pounds sterling, secured by the mortgage dated August 20th, 1851.

If the transaction is to be regarded as a mortgage, it is competent for the mortgagee, by agreement with the mortgagor, to release the personal liability of the mortgagor, and retain the mortgaged property alone for his indemnity. 2 Greenl. Cruise, 82, sec. 15, n. 3; 4 Kent, 145; *Smith v. Bank,* 24 Maine, 185; *Ball v. Wyeth,* 8 Allen, 275; *Mitchell v. Burnham,* 44 Maine, 286; *Dougherty v. McColgan,* 6 G. & J. 281; *Hicks v. Hicks,* 5 G. & J. 75; *Tripp v. Vincent,* 3 Barb. Ch. 613; *Hem-*

*enway v. Bassett,* 13 Gray, 378; White & Tudor's Eq. Cases, 72 Law Lib. top paging, 432, 433, 437; 1 Md. Digest, 700, 711, 718; *Scott v. Fields,* 7 Watts, 360.

Even if there were a mortgage debt for which Wyeth was responsible, the time for the payment thereof was, by the extension of the lease, extended to seven years after the 1st of January, 1855, that is, to the 1st of January, 1862, but the petition of the appellants was filed on the 28th of December, 1859, before the debt became due. They attempt to answer this objection by maintaining that as the rent, or as they term it, the interest, due to Jarvis on the 15th of October, 1859, was in arrear, the entire debt, principal and interest, had become payable, and payment might then be enforced; but this is an entirely gratuitous assumption, not sustained by anything in the contract between the parties, or by the laws relating to mortgages.

Even if the transaction is to be considered as a mortgage with a continuing personal liability on the part of the mortgagor, the mortgagee, having taken an absolute title to the mortgaged property, and being in possession thereof, is bound to realize the full value thereof, and account therefor to the mortgagor, before proceeding to enforce his claim *in personam.* *Andrews v. Scotton,* 2 Bland, 629, 664-5.

*Miller, J., delivered the opinion of the court.         **348**

The conclusion at which we have arrived, upon the main point in controversy in this case, renders unnecessary a determination of other questions of importance discussed at bar.

Upon the best consideration we have been able to give to the subject, the court is of opinion that the absolute deed of the " Assabet Estate," from Nathaniel J. Wyeth to Leonard Jarvis, of the 17th of August, 1852, cannot, at the instance of the appellants, be treated in equity as a mortgage, by reason of any of the papers executed at the same time, nor can we discover that it was the intention of the parties that such should be its effect and operation from any circumstances disclosed by the record, preceding and accompanying its execution.

There is no doubt but that in equity a conveyance, whatever form it may assume, will be treated as a mortgage, whenever

it appears to have been taken as a security for an existing debt
or a contemporaneous loan, and that the inclination of the
courts is, in doubtful cases, so to treat it and allow the grantor
to redeem. But on the other hand there is no principle of law
or equity which forbids parties capable of acting for them-
selves, from making conditional contracts for the sale of their
property, real or personal, or which forbids a vendor to make
an absolute conveyance of the property sold subject to an
agreement, that he shall be entitled to a re-conveyance upon
the re-payment of the purchase money, or any other sum cer-
tain, on or before a fixed day, or to make any other stipulations
by which the conveyance shall become void or remain absolute.
Such contracts are not prohibited either by the letter or the
policy of the law, and to deny the right to make them would,
as was said by Chief Justice Marshall, in *Conway v. Alexander*,
7 Cranch, 237, be " to transfer to the Court of Chancery, in a
considerable degree, the guardianship of adults as well as
minors." Nor does the fact that parties stand in the relation
of mortgagor and mortgagee, prevent their dealing with each

**349** *other as vendor and purchaser of the equity of re-
demption. Such transactions will not be set aside unless for
manifest unfairness, or inadequacy of consideration. "A mort-
gagee may become the purchaser of the equity of redemption,
if he does not make use of his incumbrance to influence the
mortgagor to part with his property at less than its value."
*Hicks v. Hicks*, 5 G. & J. 85.

The intention of the parties is, in such cases, what the courts
seek to discover and enforce, and to establish this, evidence
*dehors* the instrument, of the circumstances under which it was
given, or the object it was designed to fulfill, is admitted. " In
cases of this kind," as was well said by Chancellor Bland, in
*Hicks.v. Hicks*, 5 G. & J. 82, " every thing depends upon what
shall be deemed the intention of the parties. Where there are
several distinct instruments of writing they must all be taken
together, and the contract deduced from a fair construction of
the whole; and evidence *dehors* the writings may be let in, not
as a means of explaining or construing them, but to show what
was the real and true character of the whole contract; and if
it appears to have been intended only as a mortgage security,
the right of redemption will not be allowed to be fettered by

any conditions disadvantageous to the mortgagor. If, on the other hand, it is shown to be an absolute sale, it will not be converted into a mortgage, merely because of a stipulation to reconvey on the re-payment of the purchase money within a certain time."

In this case both parties to the deed are dead, and we have only the written instruments themselves and part of a correspondence preceding the execution of the deed from which to gather their intentions. Before examining these, it is proper to observe, that this is not a case in which the grantor is seeking to redeem, and therefore insisting that the deed is a mortgage, but the executor and some of the residuary devisees and legatees of the grantee are here asking the court to treat it as a mortgage in order to fix upon the grantor a personal liability for the debt secured by the mortgage; and they seek to *do **350** this for the purpose of having this debt set off against the share of the grantor in the estate of the grantee, he being himself one of the residuary legatees and devisees under the will of the latter.

As between grantor and grantee, where it appears that a conditional sale was a mere cloak to an irredeemable mortgage, equity will let in the grantor to redeem; but it is matter of grave doubt whether, under such circumstances, it will afford the grantee a remedy for the debt against the grantor, because no inconvenience can result to a creditor unless the security is inadequate to the payment of the debt, for he may call on the debtor to make payment at once or submit to a sale or foreclosure of the mortgaged premises; and even in those cases where he eventually proves a loser, he has no right to complain of a difficulty growing out of his own wrongful act in making the form of the transaction different from the reality. White & Tudor's Lead. Cases in Eq. 72 Law Lib. 433.

Let us now examine the circumstances attending this transaction, as well as the written instruments themselves, for the purpose of ascertaining whether the deed is, in this case, to be treated as a mortgage.

Jarvis gave to his nephew, Nathaniel J. Wyeth, of Cambridge, Massachusetts, a letter of credit on Peabody, of London, for £6,000, and, at the same time, took from the firm of Wyeth, Rogers & Co., of New York, who were interested in the

business of N. J. Wyeth, and of which Leonard J. Wyeth was a member, an engagement to guarantee him against loss to the extent of £3,000. He also, at the same time, took a *mortgage* from N. J. Wyeth on several parcels of property in Cambridge and Sudbury, Massachusetts, then valued by Wyeth at $130,-000 or $140,000, free of prior incumbrances, as security for all sums of money now due, or that may hereafter become due, and owing from Wyeth to him, and especially, and in the first place, to indemnify and save him harmless from all liability by

**351** by reason of this letter *of credit. Amongst the property conveyed by the mortgage was the Assabet estate, consisting of an ice establishment in Sudbury. Besides the liability on account of the letter of credit, Wyeth was also indebted to Jarvis to the extent of some $2,000 or $3,000. These papers, the letter of credit, the guarantee, and the mortgage, all bear date the 20th of August, 1851.

Wyeth expressed a strong desire that the mortgage should not be recorded at present, but said it might be recorded if Jarvis desired it. It was placed on record on the 4th of February, 1852, and on the 2nd of March Wyeth writes, complaining of this, and saying it would prevent him from borrowing money on the large surplus of his estate; that by a prior letter, (which does not appear in the record,) he had offered to Leonard J. Wyeth and Jarvis, in which their interest was equal, ample security for the letter of credit, and that if Jarvis would accept this, it would release his other property. By letter of the 4th of March, Jarvis, in reply, says : " I have no wish to take any advantage I may have in being first on record; provided you and Leonard pay up the letter of credit, or one-half it, I will pay the other half, you to give me satisfactory security for this half and for the note I hold of yours for about $2,800 or $2,900, say for about $1,800 in all, and provided such a change of security can now be made legally and securely. I don't wish to keep you away from your resources more than is consistent with my safety. Security, ample and good, I must have if any change is made. If I can accommodate you in this way, I shall be happy to do it. But I fear your six months' law, which you have brought to our notice, will be an effectual barrier to any such change of security at this time."

The security thus offered by Wyeth was evidently the Assa-

bet property, for, on the 30th of July, Wyeth àgain writes to Jarvis, saying: " You have employed someone to fix the value of the Assabet property. I do not know what the result of your inquiries have been," and he then encloses to *Jarvis two **352** letters from parties valuing the property, and states that it cost him over $27,000, and then adds: " I ask your early attention to this matter, for many are implicated in it. If you could write Leonard that you will be satisfied with this property for your security, it may relieve me at once." One of the enclosed letters from F. Tudor, says he has seen the Assabet establishment; that the value of such property depends on the continued prosperity of the ice trade; that it cannot be worth less than cost, and as Wyeth says it cost $25,000, he would think it worth that sum. The other letter says it would then rent for $2,500 or $3,000.

No other correspondence appears, and we know nothing of the further negotiations between the parties which resulted in the contract evidenced by the instruments executed on the 17th of August, 1852. These instruments are:

1st. An *absolute deed* from Wyeth and wife, conveying to Jarvis in fee, the Assabet property, for the consideration of $15,000.

2nd. A *lease* from Jarvis to Wyeth of the same property for the term *of three years,* from the 15th of October following, at the rent of $900, payable semi-annually, the lessee covenanting to pay the rent, to keep the premises insured, to deliver up possession at the end of the term, to pay taxes levied during the term, and also to pay the rents and taxes for such further time as the lessee may hold the same, and not to suffer waste, etc.

3rd. An agreement or indenture, as it is called, between Wyeth and Jarvis, which recites the conveyance in fee to Jarvis of the Assabet property, one of the estates heretofore conveyed to Jarvis by the mortgage of the 20th of August, 1851, and the lease thereof to Wyeth for the term of three years, and then sets forth, " that said conveyance and demise are made upon the following *terms* and *conditions,* to wit:"

If Wyeth shall perform the covenants in the lease, then Jarvis " agrees, at any time within the term of *three years* above

**353** specified, upon payment to him of the sum of *$15,000, to *convey unto the said Wyeth,* his heirs and assigns," the said Assabet estate; "and the said Jarvis further agrees, that upon such payment to him of the sum of $15,000, or other satisfaction for that amount, either by a sale of said estate as hereinafter provided, or by a good and absolute title to the same being vested in the said Jarvis, he will release and discharge the said Assabet estate from all his claims upon the same retained by him under the mortgage above referred to."

Upon Wyeth's failure to perform the covenants of the lease, or if the $15,000 shall not *be paid* to Jarvis *for said estate* by Wyeth, his heirs, executors, etc., at or within said term of three years, then Jarvis shall have the right to sell the estate at public auction, and if such sale be made within *six years* from the date hereof, it shall be on the premises, with notice, etc., and upon any conveyance of the estate by virtue of this agreement, the said Jarvis may make and deliver to any purchaser thereof a deed, or deeds, in confirmation, release or warranty of the same in the name of Wyeth, as his attorney for that purpose, by these presents appointed; and out of the money arising from the sale, Jarvis agrees, after retaining the sum of $15,000, with costs of sale, to render the overplus, if any, together with a true and particular account of the sale, to Wyeth, his heirs, etc. "And it is further agreed, that any sale of said estate made by said Jarvis, *after said period of six years,* shall be a *perpetual bar* against all claims by said Wyeth, his heirs or assigns, *without any notice being given or account rendered to him of the same.*"

4th. An assignment from Jarvis to Leonard J. Wyeth, for the consideration of $17,315, of all his interest in the mortgage of the 20th of August, 1851, and of the debt thereby secured and the estate thereby conveyed, except the Assabet property, "as to which estate my interest in the said mortgage is to continue as security for the sum of $15,000," and the residue of the mortgage and the estate thereby conveyed, the said Leonard is to hold as security for the sum of $17,315,

**354** *the consideration above expressed. To this assignment is appended an agreement by Nathaniel J. Wyeth, dated the 18th of September, 1852, by which he assents to and ratifies and confirms "the above assignment and the separation and

apportionment thereby made of the estate conveyed, and the debts secured by said mortgage."

5th. An agreement between Jarvis and Leonard J. Wyeth, which recites the deed in fee of the Assabet estate, included in the mortgage, the assignment of the residue of the mortgage and the estate thereby conveyed to Leonard, "excepting the said Assabet estate, in which the said Jarvis *retains* his interest *under said mortgage* to the extent of $15,000, *for the better protection of his title to the same,"* and then stipulates that Leonard shall pay or discharge on or before the 1st of November, following, the whole amount due by Jarvis to Peabody, on the letter of credit, and give his note to Jarvis at three years for $2,315, to take up Nathaniel J. Wyeth's note to him for that amount, and Jarvis on his part agrees to supply to Leonard, on or before the 15th of October, following, the sum of $15,000, " being the amount of the consideration expressed in the deed," to him for the Assabet estate, and made payable to said Leonard by the written authority and request of the said Nathaniel to said Jarvis hereto annexed. The annexed authority here referred to is an order by which Nathaniel J. Wyeth, in consideration of the promise and undertaking of the said Leonard, expressed in said agreement, directs Jarvis to pay to Leonard, on or before the 15th day of October, next, the sum of $15,000, "being the amount of consideration expressed in my deed of this date to said Jarvis of the Assabet estate in Sudbury."

Subsequently to the execution of these papers, an agreement was indorsed by Jarvis on the *lease* modifying it so as to extend to seven years after the 1st of January, 1855, but in all other things to remain as it is now, in October, 1854: and on the agreement or indenture, accompanying the deed is endorsed by Jarvis, of date the 13th of November, 1854, this *agree- **355** ment : " The lease mentioned in this agreement having been, by memorandum on the back of the lease, extended to seven years after the 1st of January, 1855, the said Leonard Jarvis agrees to extend also the right to *redeem* the land herein mentioned upon the payment of the sum of $15,000, at any time within said term of seven years, and not to *foreclose* within said term."

Looking to the face of the deed, the lease and the accompanying agreement, though the latter is badly drawn, and in

same respects almost unintelligible, we think the intention of the parties is very apparent that the property was to be conveyed absolutely to Jarvis, subject to a *re-conveyance* upon payment of $15,000 within three years, and if the property were sold after that time, and within *six years,* Jarvis was to receive from the sale only the $15,000, with costs and expenses of the sale; but, after that period of six years, the deed was to remain indefeasible and absolute. No other construction can, in our opinion, be placed upon the last condition in the agreement, that any sale made by Jarvis of the property after said period of six years, shall be a perpetual bar against all claims of Wyeth, his heirs and assigns, without notice given or account rendered. This is what the books call a conditional sale. The right to make such contracts being conceded, we see no limitation that can be placed on the conditions upon which the parties may choose to agree, fixing the contingency upon which the deed is to be void or to remain absolute. And what objection can there be in so treating this transaction? The fact that the parties previously stood in the relation of mortgagor and mortgagee, rather strengthens than otherwise, the position that this was a conditional sale of the equity of redemption in this particular estate. No inequitable advantage was taken by the mortgagor of the necessities of his nephew; he did not use his incumbrance for the purpose of forcing a hard bargain out of the mortgagor, for though Wyeth speaks of being in difficulties, there is nothing to show his necessities **356** *were such, or the pressure upon him so imminent as to make him willing to sacrifice his property for the sake of relief. The parties appear to have dealt at arms length. Jarvis, in the first instance, took a mortgage, according to Wyeth's statement, upon $150,000 worth of property to secure $30,000, and also a guaranty from other parties for $15,000 of this sum. He placed his mortgage upon record. Wyeth complains of this locking up of his resources, and wants a change of security, and offers the Assabet estate. Jarvis replies, he is willing to make the change, provided it can be done legally and securely, but if such change is made, he must have ample security. He then sends some one to fix the value of the proffered estate. Wyeth, hearing of this, places his own estimate upon it, and gets certificates from others of its value. Jarvis then

goes to Massachusetts, for it appears he was there when the papers of the 17th of August were executed.    These papers are the consummation of the negotiations and the embodiment of the final contract between the parties, and from them it clearly appears, in our judgment, that Wyeth sold and Jarvis purchased the Assabet property upon the terms and conditions expressed in the agreement accompanying the deed.    The motive for this on the part of Wyeth was to relieve the residue of his property from the incubus of the mortgage in the hands of Jarvis, who had manifested a determination to hold on to the whole, and to place it in the hands of Leonard J. Wyeth, with whom he was engaged in business, and where he could more readily use it for business purposes, and on the part of Jarvis to permit his nephew access to his resources, so far as he could do it with perfect safety to himself.    We have no doubt the first proposal from Wyeth contemplated a continuance of the mortgage upon the Assabet property alone as security for the debt, but we are well satisfied this proposal was not accepted by Jarvis.    He did not trust to Wyeth's representation of its value, for if he did, we cannot see why, in view of the kindly disposition manifested in his letter of the 4th of March, he should not have \*consented to remain mort- **357** gagee of property worth $27,000 or $30,000 to secure $15,000 of debt or liability, and have simply released the residue of the mortgaged estates or transferred his interest in them to Leonard J. Wyeth.    We cannot perceive the necessity of formally executing all these papers if the design of the parties was, that the relation of mortgagor and mortgagee was thereafter to continue between them as to this property.

The reference to the mortgage, and the use of the words "security," "redeem" and "foreclose," which appear in the antecedent correspondence, and in the papers themselves, are strongly relied on by the appellants' counsel as evidencing an intention of the parties that these instruments were to operate simply as a mortgage for the security of the debt.    Such, it is true, are the phrases usually employed when mortgages and instruments intended as security merely, are spoken of.    But in these deeds and papers of the 17th of August, we find no such use of them as will warrant us in concluding such was the intention of the parties, in face of the plain purport of the

instruments themselves, and the express and unequivocal language used in other parts of them. The reference to the mortgage and the retention of his interest thereunder by Jarvis, as to the Assabet estate, of which he was then taking an absolute deed, was made and done, as one of the papers state, "for the better protection of his title" to the property. The letter of Wyeth, of the 2nd of March, had disclosed to him the fact that there were unrecorded mortgages and incumbrances prior in date to his own on this property. By releasing his mortgage, and taking a deed with notice of these incumbrances, they would be let in as against him, and any title he might acquire under the deed. To prevent this, as well as the operation of intervening incumbrances and claims against the property, Jarvis was careful to retain his interest under the mortgage to protect his title under the deed. This, we think, satisfactorily explains the reference to the mortgage, and goes far to **358** show the parties intended something more *than the mere continuance of the mortgage by this absolute deed and the accompanying papers. The expressions in the agreement of the 13th of November, 1854, extending that of August 17th, 1852, for seven years, must also, we think, be taken in reference to the agreement to which they refer. When Jarvis thereby agrees to extend the right to *redeem the land* for seven years, we must infer he meant that Wyeth should have the privilege of *re-purchase* on payment of the $15,000, as expressed in the agreement, and when he agrees not to *foreclose* within that time, he must have meant, he would not proceed *to sell under the agreement* before that period.

If the parties had for the first time met on the 17th of August, 1852, and these instruments had then been executed and the fact of the pre-existing debt or liability had been shown, there would have been a much stronger case presented for treating the transaction as a mortgage, especially at the instance of the grantor. But such is not the case. The parties were perfectly cognizant of the *existing* relation between them of mortgagor and mortgagee, and without the use by the mortgagee of the influence of his incumbrance on the one hand, or the pressure of necessity inducing the mortgagor to part with his property for less than its value on the other, they deliberately *changed* their relations, and contracted for and con-

summated a sale and purchase of the equity of redemption, in part of the mortgaged premises, upon the terms and conditions expressed in these papers. We can discover no reason and can find no authority which will compel us to disturb such a transaction—certainly not at the instance of the grantee or his representatives. The parties were capable of so contracting, and the contract must, in this case, stand as they have made it.

We are strongly fortified in our conclusions, both as to law and fact, by *Hicks v. Hicks*, 5 G. & J. 75. In that case a mortgage was given to secure an existing debt, and two years afterwards, the mortgagee having also in the meantime *pur- **359** chased up an intervening mortgage, took from the mortgagor an absolute deed of the property, and at the same time executed an instrument in writing by which he agreed to re-convey the property to the mortgagor at the end of two years, upon the latter paying him the sum mentioned in the deed, and in the meantime the mortgagor was to pay to the mortgagee the sum of $125 per year. The grantor failing to pay within the two years, filed his bill after that period to redeem, and insisted the deed should be treated as a mortgage. But both the Chancellor and the Court of Appeals decided the transaction to be a conditional sale of the equity of redemption, and refused relief. The Court of Appeals in that case said the provision in the instrument, executed concurrently with the absolute deed, that the grantor was to pay the grantee $125 per year, constituted the former a *tenant* of the premises to the latter at a rent of that sum per annum, and that this circumstance, with others, tended to show the transaction was intended as a sale, and not as a security for the re-payment of money. In this case, by an express lease, Wyeth was constituted the tenant of Jarvis, and we cannot suppose that if the instrument in *Hicks v. Hicks, supra,* instead of the simple form there used, had assumed the more complex one of a lease and an agreement containing stipulations and conditions such as are found in the present case, the decision of the Court of Appeals would have been different. Force was also given in that case to the fact that the grantor had said the property was not to pass out of his family, if he could raise the money within two years to pay for it, and this was held to be evidence that the grantor re-

garded the transaction as a sale, and not as a mortgage. Much stronger circumstances of that character are presented in this case. Wyeth applied for and obtained an extension of the lease and the agreement for seven years, and during his life paid the rent, showing full knowledge and consent on his part to hold the property in the sole capacity of tenant, and under the terms and stipulations of the agreement. He desired an **360** extension *of the time of the continuance of that relation and of the power to re-purchase. Jarvis died in 1855, and Wyeth in 1856, and in the last will of the latter is this clause: "I direct my said executors to carry into effect a *bond* which I hold against the estate of the late Leonard Jarvis, of Baltimore, dated August 17th, 1852, and extended November 13th, 1854, concerning the Assabet estate, in Sudbury, if, in their judgment at the time, it will be for the interest of my estate so to do, intending hereby to leave it optional with my said executors to *redeem* said estate or not, as they shall deem best under all the circumstances then existing, saving any lease I may have made of the premises." He thus by the last act of his life declared in effect that he had no hold upon this estate, except by carrying out this *bond,* and that unless when the extended time should expire, his executors should think best to *redeem* it as the bond had provided, the property would not go to his devisees.

We are aware numerous authorities may be found, both English and American, in which absolute deeds have been treated as mortgages and the right of redemption upheld. A large number of such cases have been carefully collected by the appellants' counsel in their brief, and presented in argument. Most of the cases upon the same subject will also be found collected and collated in White & Tudor's Lead. Cases in Eq. 72 Law Lib. 414-447. We find nothing in those decisions in conflict with the law as announced by Chief Justice Marshall in *Conway v. Alexander,* 7 Cranch, 218, or overruling the case of *Hicks v. Hicks, supra,* and if any such conflict existed, we should follow the decision of our own court and that of the Supreme Court of the United States. The English authorities upon the same subject will also be found to have been carefully examined and fully reviewed by Lord Chancellor Cottenham, in *Williams v. Owens,* 5 Mylne & Craig, 303, where

the law is declared to the same effect as stated by Chief Justice Marshall.

We have given this case an attentive and careful consideration, and are of opinion the order of the court below should *be affirmed. The case, however, is one in which the **361** executor and devisees were warranted in raising the question and in taking this appeal, and the costs of the appeal will be allowed out of the funds in the hands of the executor and trustee.

*Order affirmed and cause remanded.*