### EDWARD J. SCANLAN ET AL.

### v.

### TIMOTHY H. SCANLAN.

*Trust Deeds—Foreclosure—Sale—Equity of Redemption—Dower— Release of*—Laches—*Evidence.*

1. A formal deed is not required for the release of an equity of redemption when the mortgage is made in the form of an absolute conveyance.

2. If in such case subsequent transactions between the mortgagor and mortgagee make it inequitable to allow redemption, equity will refuse its aid.

3. The fact that a wife received no consideration for a release of her right to dower can not affect the validity thereof.

4. Upon a bill brought to redeem certain real estate, and a cross-bill praying that a dower right might be set aside therein, this court holds, that the deceased mortgagor, together with his wife, in his lifetime, sold all interest possessed by them in the land in question, and that the consideration therefor was duly paid.

[Opinion filed May 29, 1889.]

IN ERROR to the Circuit Court of Cook County; the Hon. LORIN C. COLLINS, Judge, presiding.

Mr. JAMES E. MONROE, for plaintiff in error.

Messrs. SMITH & PENCE and T. J. WALSH, for defendant in error.

GARNETT, P. J.   In his lifetime Jeremiah Scanlan was the owner in fee of the real estate in controversy in this case, known as No. 424 State street, in Chicago, subject to three trust deeds thereon to L. C. P. Freer, which secured separate loans made to Jeremiah in the years 1874, 1875 and 1876. Default having been made in the payment of interest due on the loans, Freer advertised and sold the premises to Nathan M. Freer, his son, in pursuance of the power given by one of the trust deeds, and conveyed the same to Nathan by trustee's deed, dated March 4, 1879.   Nathan did not claim that he acquired the absolute title to the property, free from the equity of redemption, and, in fact, the record satisfactorily leads to the conclusion that after the sale the relation of mortgagor and mortgagee, between Jeremiah and the owner of the indebtedness, continued.

For the purpose of saving the property, Jeremiah arranged with his brother, Timothy H. Scanlan, to advance the amount necessary to make the redemption and take the title as security.   To carry out this plan Timothy paid to the holder of the indebtedness a part thereof in cash and secured the rest, which he has since paid.   At the same time Nathan conveyed the property to Timothy by quit-claim deed, dated May 1, 1879, and Jeremiah and his wife by quit-claim deed, dated May 2, 1879, also conveyed the same to Timothy, but no consideration was received by them for the deed.

In the fall of 1880 Jeremiah Scanlan died, leaving him surviving his widow, Ann Scanlan, and Nellie Scanlan, then in her nineteenth year, and Edward J. Scanlan, then in his seventeenth year, his heirs at law.   This litigation arises out of a bill filed July 14, 1887, by Edward and Nellie against Timothy and Ann Scanlan, in which they allege that the relation of mortgagor and mortgagee, created as aforesaid, still continues, and pray that they be allowed to redeem.

Ann Scanlan filed a cross-bill praying that her dower right be set off to her.   To the bill and cross-bill Timothy set up as a defense that, in October, 1879, he agreed upon a settlement with his brother, and that they fixed upon the value of the property, and upon the several amounts he had advanced

as loans to Jeremiah, and for taxes, assessments and repairs, and that he then paid the latter the difference ($2,100) between the agreed value of the property and the amount of the advances. We are of opinion that the evidence fairly proves that in October, 1879, a settlement was agreed upon between these brothers, by which Timothy was to pay Jeremiah the sum of $2,100 for whatever interest in the property remained in the latter and his wife; that he, Jeremiah, then signed a receipt in full for all claims against the property in consideration of the sum of $2,100, and that his wife, being unable to write, signed her name by making her mark thereto; that at the time she so made her mark a draft for $2,100 was handed to her by Timothy's agent, and the same was passed over by her to her husband, who in regular course collected the amount therefor.

Mrs. Scanlan denies having signed the receipt, but Nathan M. Freer testifies that he prepared such a receipt in the presence of the two brothers, one of whom (but he does not remember which) took it and said they were going to get Mrs. Scanlan to sign it. Marcus I. Stearns, agent of Timothy, testified that in the fall of 1879, he took a paper to Mrs. Scanlan to be signed and that she did sign it in his presence. He thinks the same paper was signed by her husband, and when she signed it he handed to her a piece of New York exchange in consideration thereof. There is no pretense that any other paper was signed by either of them in the fall of 1879 at the request of Stearns. If it was not the receipt in question which she signed, what was it? The paper itself is lost, having probably been destroyed by fire, but the draft for $2,100, dated October 18, 1879, indorsed by Jeremiah Scanlan, was produced in evidence. Soon after the making of the receipt Timothy took exclusive possession of the building on the premises, expelling therefrom his brother and family. He has since at all times maintained his hostile claim, and though Mrs. Scanlan must be presumed to have known she had a right of dower in the equity of redemption, unless she had released it, no step was taken by her to assert her supposed interest until November 16, 1887, when she filed her cross-bill in this case.

Scanlan v. Scanlan.

If the facts and circumstances established by the positive testimony, tending to show the release, were in need of support, we think the long delay and acquiescence in Timothy's adverse assertion of ownership, go far toward inducing the conviction that the settlement and release were made as claimed.

A formal deed is not required for the release of an equity of redemption, when the mortgage is made in the form of an absolute conveyance. Seymour v. Mackey, 126 Ill. 341.

In such cases if subsequent transactions between the mortgagor and mortgagee make it inequitable to allow redemption, equity will refuse its aid. West v. Reid, 55 Ill. 242.

The consideration for the release appears to have been all received by Jeremiah, but that can make no difference as to the effect of the transaction. Payment of a consideration to a wife for a release of her dower by joining with her husband in a conveyance, may sometimes happen, though it is very unusual. But making the validity of her release depend on the receipt of a consideration by her personally would be an unfortunate doctrine.

The statute, Chap. 68, has removed the disability of the wife, except in the instances there specified, and no reason is perceived why she may not part with her property rights for a consideration paid to her husband alone. The charge that the consideration for the release was inadequate is not sustained. The evidence was ample to warrant the court in finding that there was no such disparity between the value of the equity of redemption and the amount paid therefor as to require the interference of equity in behalf of the mortgagor or his heirs. The decree is affirmed.

*Decree affirmed.*