ENOCH SHECKELL
vs.
WILLIAM C. HOPKINS ET AL.
} March Term, 1851.

[MORTGAGE—EQUITY OF REDEMPTION.]

Whenever the relation of mortgagor and mortgagee is once shown to exist, the court views with distrust and disfavor any arrangement between them, by which it is proposed to transfer the equity of redemption to the mortgagee.

The parties will be held to their original relation, unless the transaction shall appear to be perfectly fair, and no advantage taken by the mortgagee of the mortgagor by reason of his incumbrance.

But there may be a sale of the equity of redemption to a mortgagee where the transaction is fair, untainted by any advantage taken by the mortgagee of the necessities of the mortgagor, to influence him to part with his estate for less than its real value.

9*

It being proved that a fair purchase at a fair price, of the mortgaged property, was made by the mortgagee, the court refused to grant relief to the mortgagor on a bill to redeem, and ordered the bill to be dismissed.

---

[The facts upon which the decree in this case is founded, are sufficiently set forth in the Chancellor's opinion.]

---

THE CHANCELLOR:

There can be no doubt, that whenever the relation of mortgagor and mortgagee is shown to exist, the court views with distrust and disfavor, any arrangement between them, by which it is proposed, to transfer the equity of redemption to the mortgagee. And the parties will be held to their original relation of mortgagor and mortgagee, unless the transaction shall, upon a close examination into its circumstances, appear to be perfectly fair, and no advantage taken by the latter, of the former.

This principle has been adopted by the courts, upon the supposition, that the relation of mortgagor and mortgagee is calculated to give to the latter an undue advantage over the former : and that bargains of an inequitable character are not unfrequently the result of the dealings between parties standing thus towards each other. In the case of *Dougherty* vs. *McColgan*, 6 *Gill & Johns.*, 275, the late chief justice of the Court of Appeals, said, "so there may be a sale of the equity of redemption to a mortgagee, where the transaction is fair, untainted with any advantage taken by the mortgagee, in the use of his incumbrance, or the necessities of the mortgagor to influence him to dispose of his estate for less than the real value."

The principle, however, which induces the courts to look with suspicion upon transactions between mortgagor and mortgagee, by which the equity of redemption is transferred to the mortgagee, is totally inapplicable to the case before the court, as there is not the least ground for imputing to the defendant, Hopkins, a disposition to avail himself of his incumbrance, to influence the complainant to part with his property, at an undue value. On the contrary, the uncontradicted evidence shows, that Hopkins' presence at the place where the property

was to have been sold by the sheriff, was the result of the solicitation of the complainant himself, and if he did buy, as he alleges he did, he bought at the request of, and to gratify the complainant.

There is no evidence or ground of suspicion even, that this mortgagee used, or attempted to use his incumbrance, to coerce the will, or influence the conduct of the mortgagor. The case, therefore, of the defendant, Hopkins, stands entirely free from any possible prejudice, which could be brought to bear against it, because the property in question was mortgaged to him, and the question therefore is, whether the true nature of the transaction, by which the defendant got, and has retained possession of, the slave, is, as stated in the bill, or in the answer. It appears that on the 22d of January, 1841, the complainant, for the purpose of indemnifying the defendant, and Samuel Thomas, who were his sureties in a note given to Richard Estep and Henry A. Hall, executed to them a mortgage of this slave, (named John,) and some other articles of personal property; and the bill alleges, that for the purpose of accumulating in the hands of Hopkins, by the hire of the slave, a fund in payment of the debt, he delivered him the possession at or about the time of the execution of the mortgage. The theory of the bill therefore is, that it was the understanding, and arrangement of the parties, that the mortgaged property should be placed in the hands of one of the mortgagees, that from the rents and profits, the debt should be paid and his sureties thus indemnified.

Now this statement is explicitly denied by the answer, which maintains, that the mortgagor retained the possession of the property from the date of the mortgage, until some time in October, 1843, when Estep and Hall the creditors, who had recovered judgment against all the parties to the note, issued an execution, and had it levied on this slave, when the defendant became the purchaser of him at the request of the complainant, for the sum of $400; which he agreed to pay, and did pay Estep, one of the plaintiffs in the judgment; and that on the day following the sale the complainant delivered him possession

of the slave, as the defendant's own absolute property, and that he has kept and used him ever since as such.

That the statement of the bill, that the slave was put in the possession of the defendant, Hopkins, about the date of the mortgage, or shortly thereafter, is incorrect, is most clearly established by the evidence: which is equally conclusive in showing that the possession was held by the mortgagor until October, 1843, the period of the alleged sale set up in the answer. And upon a careful examination of the whole evidence, my conviction is very strong, that the true nature of the transaction is to be found in the answer. It is impossible, I think, to read the evidence, without coming to the conclusion, or at all events, without admitting that the weight of evidence is decidedly that way. There is, to be sure, some little difficulty in reconciling the proof of Ezra Sheckell, in relation to the draft for $300, which it appears was paid in the year, 1845, by the complainant to the defendant, and the conversation which the witness held with the defendant in the spring of 1847, with the other proof in the cause. But looking to the mass of evidence in support of the answer, the repeated, unequivocal and incontestably proved admissions by the complainant, of the defendant's title, both in language and by acts, I do not feel justified in giving to that conversation, the effect claimed for it. If this $300 was paid in 1845, on account of, and in redemption of this slave, it is a little strange the complainant did not take a receipt for the money, explaining the character of the transaction. The slave had been in the possession of the defendant for two years, claiming him as his own; and it is impossible to suppose the complainant was ignorant of, or had forgotten his declarations to the witness, Sparrow and others, in relation to him. Under these circumstances it is certainly extremely improbable that he could have paid a large sum for the purpose of redeeming his property, and have no evidence of it, but a casual conversation between his brother and the defendant, held two years subsequently.

Besides, that conversation is, as it seems to me, very far from being an unambiguous admission of the ground taken by the

complainant, that the defendant was liable as a mortgagee in possession, to account for profits: for the defendant is reported to have said in the same conversation that he considered it a hard case that he should pay his money and have to pay hire too. But if he did so engage with the complainant, that is, if the understanding and agreement was, that he was to take possession of, and keep the slave, and apply his hire to the extinction of the $400 he paid Mr. Estep, why should he complain of the hardship of the case. The witness told him that he must state his interest (that is, charge interest upon the sum he had advanced) and pay hire for the slave. Now, where was the hardship of this, if the defendant intended to admit that he held the slave as a mere pledge for his advance and nothing more?

My opinion, therefore, is, that upon the pleadings and proofs, the defence is made out, and the bill must, therefore, be dismissed, there being confessedly no ground for the interposition of equity, unless the case made by the bill, in relation to the slave, is supported. The other matters, standing alone, being fit subjects for a different jurisdiction.

I do not deem it necessary to express any opinion upon the question of limitation: being of opinion that a fair purchase at a fair price is shown, and consequently that the case upon the merits is with the defendant.

—

Cornelius McLean for Complainant.
Randall and Pratt for Defendant.