(Decided 25th February, 1870.)

JOSEPH BAUGHER *vs.* KETURAH C. MERRYMAN.

*Parol testimony admissible to show that a Deed absolute on its face, was intended only as a Mortgage— Purchase of the Equity of redemption by the Mortgagee—Conveyance to secure an existing debt, how treated in Equity.*

In determining whether a deed, absolute on its face, is to be allowed to have force and effect according to its import, or is to be declared, as between the parties, to have the effect of a mortgage only for the security of a subsisting debt, it is necessary to determine the manner in which the deed was procured, and the objects and purposes contemplated by the parties at the time it was executed, as shown by all surrounding facts and circumstances. For this purpose parol testimony is admissible.

The mortgagee may become the purchaser of the equity of redemption, if he does not use his power over the estate to induce the mortgagor to part with it. It is nevertheless the policy of the law to prohibit the conversion of a real mortgage into a sale, and all the circumstances attending such transaction should be perfectly fair, and free from the least taint of advantage or imposition taken or practised by the mortgagee.

Baugher *vs.* Merryman.

In equity, a conveyance in whatever form it may be made, will be treated as a mortgage, whenever it appears to have been taken as a security for an existing debt; and the inclination of the Court is in doubtful cases so to treat it, and to allow the grantor the benefit of redemption.

APPEAL from the Circuit Court for Frederick County, in Equity.

Under a commission to take testimony in this cause, Stephen J. Joice and Emily Joice, his wife, daughter of the appellee, testified on behalf of the appellee. The appellant excepted to the admissibility of their parol testimony to engraft a trust upon the deed of October 22d, 1862, unless upon the ground of fraud. The remaining facts will be found sufficiently detailed in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, MAULSBY, GRASON, MILLER and ALVEY, J.

*Thos. W. Hall, Jr.,* and *S. Teackle Wallis,* for the appellant.

A deed absolute in terms and on its face will only be taken and considered as a mortgage when there is evidence of fraud in procuring it, or of fraud, accident or mistake in its preparation. But the Courts will not interfere where the instrument is such as the parties themselves designed it to be, and if they have voluntarily chosen to express themselves in the language of the deed, they must be bound by it. *McElderry vs. Shipley,* 2 *Md.,* 35–37; *Showman and Wife vs. Miller,* 6 *Md.,* 485; *Wilson vs. Watts,* 9 *Md.,* 457; *Abbott vs. Gatch,* 13 *Md.,* 331; *Ellinger, et al. vs. Crowl and Wife,* 17 *Md.,* 373.

There is no evidence to show that the deed of October 22d, 1862, from Keturah C. Merryman to Joseph Baugher, was procured by fraud, or that there was fraud, accident or mistake in its preparation, or that the parties intended it to be otherwise than an absolute deed.

The answer in this case having been called for under oath, being responsive to the allegations of the bill, and denying

the same, must prevail, unless rebutted or refuted by the tes-
of two witnesses, or one witness with pregnant circumstances.

The allegations of the answer in this case are not so rebutted
or refuted.

*E. Beatty Graff*, for the appellee.

Whenever the relation of mortgagor and mortgagee is once
shown to exist, the Court views with distrust and disfavor
any arrangement between them by which it is proposed to
transfer the equity of redemption to the mortgagee. The
parties will be held to their original relation, unless the trans-
action shall appear perfectly fair, and no advantage taken by
the mortgagee by reason of his incumbrance. *Sheekell vs.
Hopkins,* 2 *Md. Ch. Dec.,* 89; *Dougherty vs. McColgan,* 6 *G.
& J.,* 281.

No matter how absolute a conveyance may be on its face, if
the intention is to take a security for a subsisting debt, or for
money lent, the transaction will be regarded as a mortgage,
and will be treated as such. Parol evidence is admissible to
show that an absolute conveyence was intended as a mort-
gage. *Whyte vs. Bank of Westminster,* 1 *Md. Ch. Dec.,* 536;
*Artz vs. Grove,* 21 *Md.,* 456; *Hinkley, Ex'r, vs. Wheelwright,
Adm'r,* 29 *Md.,* 341.

A Court of Equity will, upon parol proof of fraud, mis-
take, or surprise, rectify and reform the written agreements
of parties, and consider an absolute deed as a mortgage. *Far-
rell vs. Bean,* 10 *Md.,* 217; *Grove vs. Rentch,* 26 *Md.,* 367;
*Gibson vs. Seymour,* 3 *Vermont,* 565; *Waner vs. Daniels,* 1
*W. & M.,* 103; *Holdridge vs. Gillespie,* 2 *Johns. Ch.,* 30;
*Henry vs. Davis,* 7 *Johns. Ch.,* 40.

Parol evidence may be admitted to show that an absolute
deed, whatever may be its covenants, was intended as a mort-
gage, or mere security for the payment of a debt, and the
grantor can have relief in equity. *Purviance vs. Holt,* 3 *Gil-
man,* 394, 405; *Webb vs. Rorke,* 2 *Sch. & Lef.,* 673; *McLana-
han vs. McLanahan,* 6 *Humph.,* 99; *Webb vs. Patterson,* 7

*Humph.*, 431 ; *Edrington vs. Harper*, 3 *J. J. Mar.*, 355 ; *Clark vs. Levering*, 1 *Md. Ch. Dec.*, 178.

There can be no doubt that, upon proper averments, and upon sufficient proof, this Court may treat an absolute deed as a mortgage.

That fraud may be inferred from facts and circumstances, from the character of the contract, or from the condition and circumstances of the parties, is well established. *Thompson vs. Banks*, 2 *Md. Ch. Dec.*, 430 ; *Russell vs. Southan*, 12 *Howard*, 145.

A mortgagee may purchase the equity of redemption, if he does not make use of his incumbrance to influence the mortgagor to part with the estate for less than its real value. *Hicks vs. Hicks*, 5 *G. & J.*, 75.

Courts of Equity will not lend their aid to enforce a penalty or forfeiture. *McKim vs. White Hall Co.*, 2 *Md. Ch. Dec.*, 510.

ALVEY, J., delivered the opinion of the Court.

The object of this suit is to have a deed of assignment of certain leasehold property, absolute on its face, made by the appellee to the appellant, declared to have the effect only of a mortgage as between the parties thereto, and to obtain an account.

The leading facts of the case, as disclosed by the record, appear to be these : The appellee, being the mother-in-law of Stephen J. Joice, and the owner of certain leasehold property on Fayette street, in the city of Baltimore, in which she and the family of Joice resided, with a view of aiding her son-in-law to raise money to commence business, on the 28th of April, 1858, executed a mortgage of her property to the appellant, to secure and indemnify him for his credit loaned to Joice to an extent not to exceed $5,000.

The mortgage recites that the appellant had agreed to loan Joice his promissory note, drawn in favor of and endorsed by the firm of Deford & Sons, for $2,500, payable at nine months from the 28th of April, 1858, and also another pro-

missory note to be drawn by the appellant in favor of Joice, for $2,400, at or before the time of maturity of the first note, for the purpose of renewing and withdrawing the first note when it became due, and so to enable him, from time to time, to renew the same for the period of three years from the date of the mortgage; but that the appellant should not become responsible at any time for more than $5,000.

The mortgage was subject to the conditions that Joice should comply with the terms of the agreement, and pay and take up each of the notes as it matured, and hold and keep the appellant harmless. The appellee assented to the passing of a decree, under the Act of 1833, ch. 181, for the sale of the mortgaged property, to take place on default made in any of the conditions; and until default she was to hold and enjoy the premises, and to receive the issues and profits thereof to her own use.

The notes were furnished to Joice by the appellant as contemplated by the mortgage, and the last of which, for $2,500, payable about the first of May, 1861, Joice failed to take up, and, consequently, the appellant was required to pay it, and thereby the mortgage became forfeited and subject to foreclosure.

The appellant did not take a decree of foreclosure, as he might have done, under the terms of the mortgage; but soon after forfeiture, he became anxious to close the matter, and being convinced, as he avers in his answer, that the property was not worth more than the amount of his claim, and wishing to avoid further increase of his liability, he called on the appellee and stated to her his fears, "and the necessity for his insisting upon a foreclosure, or to take a deed at once of the property, in liquidation of his claim, and thus at once close the whole business, and avoid the expense of foreclosure." But there seems to have been a disposition to delay on the part of the appellee, notwithstanding the urgency of the appellant; and on the 19th of March, 1862, we find Joice entering into an agreement with

the appellant, that in consideration of the latter extending the time of payment until the first of July, 1862, the former would, on or before that date, pay the full amount of his indebtedness, or, failing to do so, would then transfer the mortgaged premises to the appellant. This was Joice's own act, the appellee not appearing to be connected with it; and why the appellant should have entered into such a contract with Joice, it is difficult to conjecture, unless it was to avail himself of Joice's influence with the appellee to induce her to make the absolute deed required, as Joice clearly had no right or power himself to transfer the property.

But, as might well have been anticipated, in view of Joice's circumstances, he failed to make payment according to his undertaking; and the appellant finding, as he avers in his answer, "that the mortgage debt and other incumbrances upon the property, were increasing, he determined to insist upon foreclosing his mortgage, or upon an absolute deed of the mortgaged property, in payment of his claim at the election of the complainant; that from that time, up to the 22d day of October, 1862, he continued to urge upon the complainant and the said Joice the necessity of closing the business, and that he must insist upon a foreclosure, or have an absolute deed for the property, free of any condition or right of redemption."

This persistent demand resulted in the execution of the absolute deed of assignment by the appellee on the 22d of October, 1862. This instrument was prepared at the request and under the instruction of the appellant himself, and the consideration expressed in it is the sum of $2,621.67, paid, and also the satisfaction and discharge of the mortgage debt; but there was, in fact, no money paid, the only consideration being the mortgage debt.

The appellee remained in possession of the property up to the 22d of October, 1862, but after the making of the deed of that date, the property was rented to Joice until March, 1864, when he and the appellee left it, and it was afterwards rented

out by the appellant until March, 1866, when he sold it for $6,000.

The bill of complaint of the appellee charges that this absolute deed of the 22d of October, 1862, was intended only as a means of securing the appellant's debt, and that it was made on the distinct understanding that all the proceeds of sale over and above an amount sufficient to pay the mortgage debt and interest, and the necessary expenses, were to be accounted for to her; and that she was, upon the urgent request of the appellant, induced to execute the deed in consideration of that understanding, and her confidence in the appellant's pledges to observe it. She further charges that the appellant perpetrated a fraud upon her by inducing her to execute the absolute deed, under the circumstances of the case.

The appellant, by his answer, positively denies the understanding alleged, and avers that the deed was intended to operate as it appears on its face, as an absolute deed, and not as a mortgage; that it was neither given nor accepted to operate as a mortgage; and that it was voluntarily given, without fraud or imposition practised on his part, and that it was for a full and fair consideration at the time.

On this statement of the case, the question is, whether the deed of the 22d of October, 1862, absolute in terms, is to be allowed to have force and effect according to its import, or be declared, as between the parties, to have the effect of a mortgage only, for the security of a subsisting debt? And the solution of this question depends on the manner in which the deed was procured, and the objects and purposes contemplated by the parties at the time it was executed, as shewn by all the surrounding facts and circumstances. Such being the nature of the inquiry, the exception to the parol evidence taken in support of the allegations of the bill, are clearly not sustainable, and must therefore be overruled.

The relation of mortgagor and mortgagee existing between these parties at the time of the execution of the absolute deed in question, causes the Court to view with distrust, and to

scrutinize with closeness, the negotiation that led to the making of that deed, whereby it is now claimed that the right of redemption has been extinguished, and the previous mortgage converted into an absolute sale.

To sustain such a transaction as a sale, without the right of redemption, it requires that all the circumstances attending it should be perfectly fair, and free from the least taint of advantage or imposition taken or practised by the mortgagee. For, while he may become the purchaser of the equity of redemption, if he does not use his power over the estate to induce the mortgagor to part with his interest in it, it is, nevertheless, the policy of the law, as declared by the Supreme Court of the United States, in *Conway vs. Alexander*, 7 *Cr.*, 218, to prohibit the conversion of a real mortgage into a sale. For, as was said by that learned Court, lenders of money being less under the pressure of circumstances which control the perfect and free exercise of the judgment than borrowers, the effort is frequently made by that class of persons to avail themselves of the advantage of this superiority, in order to obtain inequitable bargains; and, " for this reason, the leaning of the Courts is against them, and doubtful cases have generally been decided to be mortgages." And in even more decisive terms is the same rule announced by a former Court of Appeals, in the case of *Dougherty vs. McColgan*, 6 *Gill & John.*, 275.

In that case, after giving full sanction to the principle just stated from 7 *Cr.*, 218, it was said, that " where the relation of mortgagor and mortgagee is once fairly established, though the equity of redemption may be sold or disposed of to the mortgagee; yet, unless the transaction appears to be fair, and unmixed with any advantage taken by the mortgagee of the necessitous circumstances of the mortgagor, equity will hold the parties to their original relation of debtor and creditor." And the same principle, in very much the same terms, was announced by the late CHANCELLOR JOHNSON, in the case of *Sheckell vs. Hopkins*, 2 *Md. Ch. Dec.*, 90, as the settled law of this State.

It is then by this rule, thus well established, that we are to determine this case.

It is not pretended that the appellee received any other consideration for the deed of the 22d October, 1862, than the discharge of the mortgage debt, amounting, at that time, to $2,621.67. Whether the property was worth more or less than that amount at the time, was mere matter of opinion; and as the debt was not the appellee's, and for which she was not personally bound, if the property was really worth more than the mortgage debt at the time, the appellant paid nothing for the right of redemption. That the proposal to convert the mortgage into a sale, was made and urged by the appellant, is fully admitted in his answer; the alternative proposed being either an absolute deed of the property, or an immediate foreclosure and sale. That the appellee was distressed and perplexed with such an alternative, persistently pressed upon her, it is not difficult to conceive, and, as a fact, is fully shown by the proof in the cause. She had in fact no power of escape, having agreed to a decree of foreclosure, the only chance of avoiding being turned out of house and home summarily, was by yielding to the appellant's demand for an absolute deed. This was an improper use of the mortgagee's power over the estate to influence the mortgagor to part with the right of redemption, and such as a Court of Equity will not sanction.

But was there not an understanding as to the purposes of the deed, and of which, though the deed is absolute on its face, it was to be regarded only as a means of better securing the appellant's debt? From a careful reading of the record, we are convinced that there was such an understanding, and that the deed was made with reference to it.

The evidence of this understanding is furnished by the testimony of Stephen J. Joice and Mrs. Emily Joice, witnesses examined on the part of the appellee, and whose statements in regard to the transaction derive probability from several circumstances disclosed in the record. As proven by these

witnesses, with such variation in statement as would likely occur, the effect of the understanding was, that the property should be conveyed by absolute deed as required by the appellant; and that he should hold it for a time until it could be sold to an advantage, and, in the meantime, to be rented for enough to defray interest and expenses; and, when sold, the proceeds to be applied to the payment of the mortgage debt, and the surplus, if any, to be accounted for to the appellee. There is no sufficient ground shewn for discrediting these witnesses, and, taking their evidence as true, the case of the appellee is fully made out, and brought within the principle of the cases to which we have referred.

The cases mostly relied on by the appellant in support of his defence are very distinguishable from the present, as may be easily perceived.

In the case of *Hicks vs. Hicks,* 5 *Gill & John.,* 75, the transaction brought into question was sustained as a conditional sale; but it was done, as the Court expressly say, because it appeared that, after the mortgage debt became due, no steps to enforce payment were either taken or *menaced,* nor were any indirect means used by the mortgagee to influence the mortgagor to part with his equity of redemption, but that the whole transaction was entirely voluntary, and founded on what was supposed to be a full consideration.

The case of *McElderry vs. Shipley,* 2 *Md.,* 35, was an attempt to set up a conventional trust on the foundation of a special parol agreement, contrary to the provisions of the Statute of Frauds, which, of course, could not be done. And, in the recent case of *Hinkley vs. Wheelwright,* 29 *Md.,* 341, the question was, whether the transaction constituted a mortgage or a conditional sale, and, upon the nature and circumstances of that case, it was determined to be a conditional sale. But there it was matter of construction only, depending on the intention of the parties, as deduced from certain instruments and correspondence, unmixed with any conduct of undue advantage or interposition in obtaining the conveyance. And

Baugher *vs* Merryman.

in that case it was announced as the settled law, that, in equity, a conveyance, in whatever form it may be made, will be treated as a mortgage whenever it appears to have been taken as a security for an existing debt; and that the inclination of the Courts is, in doubtful cases, so to treat it, and to allow the grantor the benefit of redemption.

Being convinced, as we are, that the deed of the 22d of October, 1862, was obtained from the appellee under circumstances not sanctioned by a Court of Equity, and that, in executing it, her design was simply to secure the subsisting debt due the appellant, in the manner proposed by him, and not to deprive herself of all benefit of the equity of redemption, the rules of equity require that the transaction be treated as a mortgage, and that the appellant should account as prayed in the bill. By this course the rights of the appellee will be protected, and the appellant compelled to accept the principal and interest of his debt, with all incidental expenses properly incurred, which, as was said by the Court, in *Dougherty vs. McColgan*, are "all that he is, in justice, entitled to, or ought to seek to attain." But, in thus allowing the appellee the benefit of her equity of redemption, the property having been sold by the appellant, it is not intended that the rights of the purchaser should, in any way, be affected; and, therefore, on taking the account, the balance ascertained to be due the appellee must be decreed against the appellant *in personam*, and for which the property sold shall not be liable.

Thinking the decree appealed from a proper one, under all the circumstances of the case, it must be affirmed.

*Decree affirmed.*

(Decided 25th February, 1870.)