WILLIAM O. FUNK *vs.* WILLIAM L. HARSHMAN.

*Absolute Deed Intended as Security for a Debt.*

Plaintiff's bill in this case alleged that an absolute conveyance
of land made by him to the defendant was intended by the
parties at the time to be a security for a debt, and prayed
for a decree directing the defendant to reconvey the land to
the plaintiff upon payment of the amount due. The evidence
examined and held to establish the truth of the allegations of
the bill and to entitle the plaintiff to the relief asked for.

*Decided February 11th, 1909.*

Appeal from the Circuit Court for Washington County
(KEEDY, J.).

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and
HENRY, JJ.

*Charles D. Wagaman* (with whom was *Frank G. Waga-
man* on the brief), for the appellant.

*Thomas A. Poffenberger,* for the appellee.

BURKE, J., delivered the opinion of the Court.

On December 31st, 1901, William L. Harshman and wife,
in consideration of the sum of two hundred and forty-four
dollars, executed and delivered to William O. Funk a deed for
a lot or parcel of ground situated in Smoketown, Washington
County, Maryland. Harshman was in possession of the prop-
erty at the time the deed was made, and remained in pos-
session until the 7th day of April, 1904, when he moved with

his family to another property in that county for the purpose
of taking care of the appellant's mother, who was old and
infirm. After Harshman had moved from the premises cer-
tain repairs were made upon the property by the appellant,
but the exact cost of these was unknown to Harshman.

The bill in this case was filed upon the theory that the
deed, although absolute upon its face, was intended by the
parties merely as a security for the consideration mentioned
therein, and it asks that an account be taken of the plaintiff's
indebtedness to the defendant; that the deed might be de-
clared to be a mortgage, and that a decree might be passed
ordering and directing the defendant to re-convey the land
and premises to the plaintiff upon his paying the amount due
the defendant, and for other and further relief. The bill
charged that the plaintiff was indebted to Samuel Funk, the
father of the defendant, in the sum of two hundred and forty-
four dollars; that Samuel Funk had died, and his executors,
one of whom was the defendant, had demanded payment of
the money, and that the defendant had offered to loan the
money to the plaintiff in order to save his home from being
sold, stating that "he would substitute himself in the place
and stead of his father," which offer was accepted by the
plaintiff. It is further charged that the plaintiff was advised
that it would be necessary and proper for him to execute a
deed for the property to the defendant which was accordingly
done, the consideration of the deed being the amount of the
debt due by the plaintiff to the executors of Samuel Funk
and loaned to the plaintiff by the defendant, which deed, it is
alleged, it was agreed and understood should be held by the
defendant until the plaintiff should repay him the amount
loaned with interest, and that upon the re-payment of the
money the defendant would re-convey the property. It is
further alleged that the plaintiff had frequently requested
the defendant to re-convey the property to him, and had
offered to re-pay the amount borrowed with interest thereon,
together with any other proper charges which the defendant
might have against him on account of some repairs made

upon the property; but that the defendant had refused to state what the plaintiff's indebtedness was, and had refused to re-convey the property as contemplated and agreed upon, and had falsely and fraudulently claimed that he was the absolute and unconditional owner in fee of the land and premises, and that he had purchased the same without any promise or stipulation to re-convey, or to allow the plaintiff to redeem.

The answer of the defendant denied that there was any such agreement as that stated in the bill, or that he had loaned the defendant any money; it denied that the plaintiff frequently requested him to re-convey the property as stated in the bill; but alleged that a short time before the filing of the bill the plaintiff requested him to sell him the property, which he declined to do. It further averred that he was the absolute owner of the property in good faith, and such claim of ownership was not falsely and fraudulently made, and that he had not at any time agreed with the plaintiff to re-convey the property to him upon any terms.

The lower Court determined that the plaintiff was entitled to the relief prayed for, and found that there was due from him to the defendant the sum of three hundred and ninety-four dollars and sixty-six cents, and decreed that upon the complainant paying that sum, or tendering the same to the defendant, with interest from the date of the decree, viz, October 10th, 1908, the defendant execute a deed, at the expense of the complainant, conveying the property to the plaintiff. From this decree the defendant has brought this appeal. It seems to be conceded that, if the Court was right in treating the deed as a mortgage, the amount due was correctly stated in the decree, as no question upon this point was made in the argument, or suggested in the appellant's brief.

There is no dispute as to the law of the case. In *Rosenstock* v. *Keyser,* 104 Md. 383, the principle which should be applied in dealing with a question of this kind was considered. We approved the rule stated in *Pom. Eq. Juris,* Vol. 3, sec. 1196: "Any conveyance of land absolute on its face

without anything in its terms to indicate that it is otherwise than an absolute conveyance, or without any accompanying written defeasance, contract of re-purchase, or other agreement may in equity, by means of extrinsic and parol evidence, be shown to be in reality a mortgage as between the original parties, and as against all those deriving title from or under the grantee, who are not *bona fide* purchasers for value and without notice. The principle which underlies this doctrine is the fruitful source of many other equitable rules— that it would be a virtual fraud for the grantee to insist upon the deed as an absolute conveyance of the title, which had been intentionally given to him and which he had knowingly accepted, merely as a security and therefore in reality a mortgage. The general doctrine is fully established, and certainly prevails in a great majority of States, that the grantor and his representatives are always allowed in equity to show, by parol evidence, that a deed absolute on its face was only intended to be a security for the payment of the debt, and thus to be a mortgage, although the parties deliberately and knowingly executed the instrument in its existing form, and without any allegations of fraud, mistake, or accident in its mode of execution. As in the last preceding case, the sure test and essential requisites are the continued existence of a debt. If there be no indebtedness, the conveyance cannot be a mortgage; if there is a debt existing and the conveyance was intended to secure its payment, equity will regard and treat the absolute deed as a mortgage. The presumption of course arises that the instrument is, what it purports on its face to be, an absolute conveyance of the land; to overcome this presumption, and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal, and convincing, for otherwise the natural presumption will prevail."

The doctrine stated by Mr. Pomeroy was recognized in this State as early as the case of *Brogden* v. *Walker,* 2 H. & J. 285, and has been uniformly applied to cases like the one under consideration. It was stated and applied in *Thompson*

v. *Banks,* 2 Md. Ch. 431; *Wetter* v. *Hardesty,* 16 Md. 14; *Hinkley* v. *Wheelwright,* 29 Md. 341; *N. C. Ry. Co.* v. *Herring,* 93 Md. 164; *Montague* v. *Sewell,* 57 Md. 414. In *Thompson* v. *Banks, supra,* it was said that, "there can be no doubt, that upon proper averments *and upon sufficient evidence,* this Court may treat an absolute deed as a mortgage, and decree a redemption of the property by the mortgagor, or solely for the purpose of paying the sum due." In *Montague* v. *Sewell, supra,* the Court said that where the instrument purports to be an absolute sale, and an attempt was made to change its character, "the original intention of the parties can seldom be arrived at except by resort to matters *de hors* the particular instruments executed by them."

In appears from the pleadings that a single question of fact is presented for decision: Was the deed of December 31st, 1901, above referred to, executed as security for the sum of two hundred and forty-four dollars loaned by the defendant to the plaintiff? If so, then, upon the principle stated, the decree appealed against must be affirmed. We have repeatedly said that where the question depends, as it does in this case, entirely upon the evidence, it is enough for the Court to announce the conclusion it arrives at, as no good result can arise from a mere recapitulation of the evidence. *Sterling* v. *Sterling,* 64 Md. 151; *Moore* v. *McDonald,* 68 Md. 341. We will, however, make brief reference to some of the more prominent facts and circumstances which support the conclusion we have reached. There is flat contradiction between the plaintiff and defendant upon the material and essential allegations in the bill, and we, therefore, must resort to the testimony of other witnesses and to the facts and circumstances attending the execution of the deed and to the subsequent conduct and declarations of the parties.

The record shows that in 1878 the plaintiff purchased, for the sum of one hundred dollars, the property mentioned in the bill from certain trustees who were appointed by decree of the Circuit Court for Washington County to make sale thereof. He borrowed from Samuel Funk one hundred dol-

lars to pay for the property, and he and his wife executed a mortgage thereon to secure the loan. In 1890 the plaintiff's total indebtedness to Samuel Funk amounted to two hundred dollars, and in August of that year the plaintiff and his wife executed a deed to Funk for the property, and he subsequently released the mortgage. On the day the deed was executed Samuel Funk and the plaintiff executed a paper which reads as follows:

August 13th, 1890.

Whereas William L. Harshman has this day executed a deed to me for a property situated in Smoketown in consideration of two hundred dollars.

Now I hereby certify and bind myself that provided the said William L. Harshman will pay me the two hundred dollars with interest within five years from the date hereof and pay all interest as it accrues at the end of each year from the date of this, then I will make him a good and sufficient deed for said property.

On this paper are the following endorsements signed by Samuel Funk:

$32.62, February 28th, 1894. Received thirty-two dollars and sixty-two cents on the within bond.

July 26th, 1895. Received eight dollars and 4 cets. on the within contract. I extend this from August 13, 1895, to August 13, 1897. I hereby agree to give William Harshman two years more time to redeem his house and lot.

May 22nd, 1892. Received on the within Note fifty dollars and 95 cents.

Samuel Funk died in June, 1900, and his executors treated the deed to their testator from Harshman as a security for his indebtedness, and demanded payment thereof. Harshman was unable to pay, and the executors in order to close the estate conveyed the property, under an order of the Orphans' Court of Washington County, to him for the exact consideration of his indebtedness to their decedent's estate, to wit, two hundred and forty-four dollars, and on the same day Harshman and wife conveyed the property to William O. Funk for

precisely the same consideration, who paid Harshman's debt to the estate of Samuel Funk by check dated January 6th, 1902.

We have no doubt that the deed from Harshman and wife to Samuel Funk was taken as a security, and was properly treated as a mortgage, and that the instrument we' have quoted, signed by Harshman and Funk, upon the facts in evidence, did not operate as a conditional sale of the property. "In cases of this kind," said CHANCELLOR BLAND in *Hicks* v. *Hicks,* 5 G. & J. 83, "everything depends upon what shall be deemed the intention of the parties. When there are several distinct instruments of writing relating to the same subject, they must be all taken together, and the contract deduced from a fair construction of the whole; and evidence *de hors* the writing may be let in to show what was the real nature and character of the whole contract; and if it appears to have been intended only as a mortgage security, the right of redemption will not be allowed to be fettered by any conditions disadvantageous to the mortgagor."

It seems to be clear that Mr. and Mrs. Harshman did not understand that the deed to the defendant was an absolute sale of the property. Their uncontradicted testimony on this point is, that upon their return to the office of Mr. Waggaman, immediately after the execution of the deed, Mrs. Harshman said to her husband: "Ain't you going to have our papers fixed up?" They were told that the executors had gone, and Mr. Harshman said to Mr. Waggaman, who was counsel for the executors: "Can't you fix up our papers to show that we have something in this place, and Mr. Waggaman said that those papers could be fixed up at any time." It is shown that the plaintiff subsequently to the execution of the deed applied to Mr. Waggaman for the agreement between himself and Samuel Funk. He charged in the bill that the defendant had agreed "to substitute himself in the place and stead of his father," and his evident object in obtaining possession of the agreement was to have some evidence of his rights in the property. If he had made an absolute sale of the property to

William O. Funk, there is no reason why he should desire
to have that agreement. His application, however, for that
paper tends to show that he still regarded himself as inter-
ested in the property, and that it would furnish written evi-
dence of that interest.

In April, 1904, the defendant was anxious to have the
plaintiff take charge of a property occupied by his mother.
The plaintiff testified that shortly before he did take charge
of that property Mr. Funk came to his house and said to
Mrs. Harshman: "Are you getting ready to move? She said,
No, I am not thinking very much about moving now; and he
asked her what the trouble was now; she said she heard that
Mr. Funk said that if he ever got her away from that place
we never would get back. Mr. Funk said that it did not mat-
ter who said so, if it was the best friend he had in the world,
it was a —— lie; that of course we could come back when-
ever we wanted to; he said, The property is yours and all I
want is what I have in it. I don't want the place. I now
remember that in the conversation with Mr. Funk at the
house he said he wanted us to get away from Smoketown;
that we never would be able to pay him any money while we
were living at Smoketown. He said, You can hardly make
a living in the shop; and that we should get away from
Smoketown and try to make some money that we could pay
him what he had in the property." Mrs. Harshman testified
that on that occasion she told Mr. Funk that she did not feel
like going away from "our home until we have the papers
fixed up for it;" that she told him that they had nothing to
show for what they had in their home; that she stated to
him that she had heard that he had said that if he got them
away from the property they would never get back; that Mr.
Funk denied that he had ever made such a statement, and
said: "Of course, you will come back to your home, the home
is yours, he said, and I don't want the home. All I want is
what I have got in it, and Bill will never make that here in
the shop. It will hardly make him a living, and you know,
Mrs. Harshman, that I mean you are to come back here.

That property down there is standing idle now, and I have it insured and must stand good for it. I mean his mother's home; said that place down there is standing idle, and he says, Now, you get ready and move, and we will fix up those papers after you get moved and are able to go to town." She also testified that he said that he wanted them to get away from the property and make the money to pay him what "he had in our little home;" that we could never pay for it there; that we could not make enough there to pay him, and that he wanted to see us have a home; that she told him that she was not able to care for his mother, but wanted to see him get his money out of the property.

This testimony of Mr. and Mrs. Harshman is corroborated in all essential particulars by that of Irene Harshman, Libbie Moore and Blanche Harshman. This testimony, showing that the defendant did not regard himself as the absolute owner of the property, is supported by that of J. C. Shoop, who testified that the defendant told him that he did not want to sell the property, *"for it wasn't his to sell."* The defendant, it is true, has denied this testimony; but he has testified to facts which are entirely inconsistent with his claim of unconditional ownership. Some of these facts are commented upon as follows in the well-considered opinion of JUDGE KEEDY, in which we entirely concur, filed in the lower Court: "The fact that the complainant, according to the defendant's contention, was to pay interest on the money ($244.00), taxes and insurance, supports the theory that said $244.00 was a loan rather than the purchase price for said property. Such provisions are not unusual conditions in a mortgage, and are certainly most unusual terms of renting property. And especially does such an agreement lend force to the plaintiff's contention in view of what had just occurred at the time, viz, that the plaintiff had paid his indebtedness to Samuel Funk's estate upon the same basis, under the deed to said Samuel Funk, and that said deed was only a security for the loan, interest, taxes and insurance due from the complainant to the said Samuel Funk. Whether or not any transfer of said

property was made on the books of the tax collector to the said William O. Funk does not appear. But if the defendant's contention be correct, it certainly would have been a very unbusinesslike condition of affairs on his part, to say the least, for the complainant to pay the taxes to the tax collector upon property owned by the defendant, and for the defendant to trust to the complainant to keep up the insurance upon property in which the complainant had no interest, and which belonged to the defendant absolutely. It seems that the taxes were so far in arrears that proceedings were taken by the tax collector to sell said property. When said taxes were paid Mr. Waggaman, as attorney for defendant, and the defendant was apprised of the fact, he, the defendant, testifies that he said to Mr. Waggaman that he "would have to collect interest on the money or rent on the property."

The evidnece does not support the charge of intentional fraud made against the defendant. He may have honestly believed that a conditional sale of the property had been made to Harshman which could not be enforced, and that as he had failed to comply with any of the terms of the agreement he had forfeited all rights thereunder. But to this we cannot agree for the reason before stated. We are of opinion, after a careful consideration of all the evidence, that the case was rightly decided by the Court below, and its decree must be affirmed.

> *Decree affirmed with costs above and below.*