### HAYNES v. ROSENFIELD et al.

No. 12565—Opinion Filed March 4, 1924.

Rehearing Denied May 13, 1924.

**1. Mortgages—Deed Intended as Mortgage —Proof.**

Although, in form, an instrument is a deed and purports to convey absolute title to the property, yet, if it was given as security for an indebtedness, it is an equitable mortgage, and extraneous evidence is admissible to show that it is a mortgage.

**2. Same—Release of Equity to Mortgagee— Effect.**

A mortgagor may, subsequent to the giving of a mortgage, by a new and independent contract, supported by a good and sufficient consideration, in the absence of fraud, oppression, or undue influence, sell or release his equity of redemption to the mortgagee, and thereby give to the latter the absolute ownership of the property.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Pontotoc County; John L. Coffman, Judge.

Action by R. E. Haynes against Louis Rosenfield et al. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

W. F. Schulte, for plaintib in error.

Wimbish & Duncan, for defendants in error.

Opinion by JARMAN, C. On March 26, 1913, the defendant Rosenfield, being indebted to the Merchants & Planters National Bank of Ada, Okla., in the sum of $1,400, gave his note to the bank for said amount due and payable on November 15, 1913, and executed a mortgage on lot 14, block 92, of the city of Ada to secure said note, and said mortgage was filed for record in March, 1913. At the time the note and mortgage were given, Rosenfield executed to the bank a warranty deed to the real estate covered by said mortgage, and the consideration recited in the deed is $1,400, and said deed was filed for record on March 19, 1914. The deed was given merely as additional security for the $1,400 indebtedness.

Rosenfield was in the mercantile business at Ada and was in a failing condition. The bank sought to effect a settlement with the creditors of Rosenfield for him, but being unable to do so, Rosenfield and the bank entered into the following contract on April 2, 1919:

"This contract made and entered into this the 2nd day of April, 1914, between the Merchants & Planters National Bank of Ada, Oklahoma, in this instrument known as first party, and L. Rosenfield of Ada, Okla., herein called second party, Witnesseth:

"That Whereas, the second party, joined by his wife, Fannie Rosenfield, has this day made, executed and delivered unto the first party, their instrument and covenant in writing, agreeing and covenanting that the warranty deed executed and delivered unto the first party by second parties on March 26, 1913, to secure the payment of a certain promissory note of same date by second parties to first party, to lot No. 14, of block No. 92 of city of Ada, Oklahoma, might be, and shall hereinafter be an absolute conveyance of said property in fee simple.

"Now, Therefore, as a collateral agreement and contemporaneous therewith, in consideration of the sum of $500 this day in hand paid by first party unto said second party for said lot, it is hereby agreed by and between the parties hereto and aforementioned, that after a settlement with the creditors of second party (or after closing or winding up of bankruptcy case, if this event should occur) first party agrees to

reconvey said lot unto second party or to whomsoever he might direct, at the same figure, to wit: $500.00, the second party to reimburse first party for all taxes paid on said lot, and interest on said $500.00 at 10 per cent. per annum.

"In Witness Whereof, said parties have hereunto set their hands this the day and year first above written."

The record shows that there was a written contract, executed by Rosenfield and his wife, covenanting and agreeing that the warranty deed executed by Rosenfield to the bank should be an absolute conveyance of said real estate and the contract, above set out, dated April 2, 1914, as recited therein, is a collateral agreement and contemporaneous with the written contract executed by Rosenfield and wife, whereby the covenanted that said warranty deed should be an absolute conveyance of said real estate.

During the latter part of 1914, Rosenfield went into bankruptcy. He did not list the real estate in controversy among his assets and the bank filed a claim in the bankruptcy proceedings, only, for the amount of its indebtedness against Rosenfield in excess of the $500 recited as consideration in the contract to be paid by Rosenfield for the reconveyance of said property.

After settlement was had with the creditors of Rosenfield through bankruptcy proceedings, the bank offered to reconvey the property to Rosenfield for the price agreed upon in the contract of April 2, 1914, but Rosenfield refused to have anything to do with the property; the bank offered to deed the property back to Rosenfield for the $500 and take a mortgage on the property for the purchase price but Rosenfield declined to do so and said that he did not want the property.

On November 22, 1916, the bank sold said property to Chas. A. Zorn for the consideration of $1,000 and executed the deed therefor; Zorn gave his note to the bank for $1,000 and placed the deed with the note in the bank where it remained until May 18, 1917, when the note was paid and Zorn on the same date, May 18, 1917, got the deed and placed it of record.

On May 10, 1917, Rosenfield executed a power of attorney to the defendant McKinley, whereby he authorized and empowered McKinley to procure a reconveyance of said property. The bank declined to convey said property to Rosenfield or to McKinley. The plaintiff, M. F. Haynes, procured his deed to said property from Zorn with knowledge of the power of attorney executed by Rosenfield to McKinley.

Suit was filed in the district court of

Pontotoc county by M. F. Haynes against Lewis Rosenfield and his wife, Fannie Rosenfield, and John P. McKinley to quiet title to said property. Judgment was rendered by the court that the warranty deed executed by Rosenfield and his wife to the bank on March 26, 1913, was given to secure an existing indebtedness to the bank, and was, therefore, a mortgage, and adjudged the defendants to be the owner of said property, subject to the amount of the indebtedness, $921.56 which was decreed a lien on said property. From this judgment the plaintiff brings error.

It is conceded that, although the deed, in form, is absolute on its face and purports to convey the title to said property, yet, since it was given as security for the payment of an indebtedness, it amounted to a mortgage.

The plaintiff contends, however, that the equity of redemption was cut off and was discharged and that the deed, which was formerly a mortgage, became absolute, when the subsequent independent contract was made, wherein Rosenfield released and surrendered his right of redemption and agreed that said deed should become absolute, and, in said contract, Rosenfield reserved the right to repurchase the property at the stipulated amount. The plaintiff contends that the doctrine of "once a mortgage always a mortgage" has reference to contemporaneous agreements made by the mortgagor and the mortgagee at the time of the execution of the mortgage, and that it does not apply to subsequent and independent agreements, made between the mortgagor and the mortgagee, whereby the mortgagor surrenders his right to redeem the property under the mortgage, and, that if such agreement or contract is made subsequent to the execution of the mortgage and wholly independent thereof and the mortgagor, in the absence of fraud and for a valuable consideration, releases his equity of redemption, that the deed which was originally a mortgage becomes absolute and the property becomes vested in the mortgagee.

It is well settled that a mortgagor cannot be deprived of his equity of redemption by any form of words embodied in a mortgage or in a contemporaneous agreement for the reason, as stated by the court in the case of Bradbury v. Davenport (Cal.) 46 Pac. 1062, at page 1063, 55 Am. St. Rep. 92:

"* * * That their necessities often drive them to make ruinous concessions; that, when one borrows money upon the security of his property, he is not allowed by any form of words to preclude himself from redeeming (Jones, Mort. secs. 251, 1045), though the doctrine 'once a mortgage always a mortgage'" does not apply to subsequent contracts. Watson v. Edwards (Cal.) 38 Pac. 527.

This rule is recognized by our court in the case of Wagg v. Herbert, 19 Okla. 525, at page 560, 92 Pac. 250, which approves the doctrine announced in Watson v. Edwards, supra, as follows:

"In Watson v. Edwards it was held that section 2889 of the Civil Code does not affect or refer to a subsequent contract between the mortgagor and mortgagee in respect to the title to the mortgaged premises and it is said: 'A mortgagor may sell and convey all his right and interest in the mortgaged premises to the mortgagee, where the transaction is fair, honest, and without fraud, and where no unconscionable advantage has been taken of his position by the mortgagee.' We concur with this doctrine announced by the California court, which counsel states is based upon a statute identical with ours. It will thus be seen that the doctrine announced by the California courts is in full harmony with the doctrine announced by the Supreme Court of the United States in the case of Russell v. Southard, supra, and in harmony with the views herein stated. It holds, as all the courts hold, that a mortgagee may purchase from the mortgagor if the transaction is fair, honest, and without fraud or undue influence, and where no unconscionable advantage is taken by virtue of the relation existing between the mortgagor and mortgagee."

The rule is further stated in the note to the case of Bradbury v. Davenport, supra, 55 Am. St. Rep., at page 105, a follows:

"While a mortgagor cannot, by a contemporaneous agreement, expressed in the mortgage or otherwise, waive or release his equity of redemption there is no law to prevent a mortgagor, by a new, independent, and fresh contract, from selling or releasing his equity of redemption to the mortgagee, thereby giving the latter absolute ownership of the property, after a default in complying with a condition. The law only prohibits a mortgagee from availing himself of a stipulation contained in the mortgage, or in a separate instrument made at the time or of some covenant or agreement forming part of the original transaction, and by which he attempts, upon the happening of some event or condition, to render the estate irredeemable. The doctrine, 'once a mortgage, always a mortgage,' does not, however, refer to a future contract between the mortgagor and mortgagee in respect to the estate between the parties, and the mortgagee may always purchase the mortgagor's right of redemption, and thus acquire an absolute title. Hence a subsequent release or waiver of the equity of redemption will be sustained if supported by a sufficient

consideration in the absence of fraud, oppression and undue advantage. Spurgeon v. Collier, 1 Eden. 55, 60; Villa v. Rodriguez, 12 Wall, 323, 339; Parmer v. Parmer, 74 Ala. 285; Stoutz v. Rouse, 84 Ala. 309; McMillan v. Jewett, 85 Ala. 476; McMillan v. Richards, 9 Cal. 365, 70 Am. Dec. 655; Green v. Butler, 26 Cal. 595, 602; Phelan v. DeMartin, 85 Cal. 365; Watson v. Edwards, 105 Cal. 70, 75; Wynkoop v. Cowing, 21 Ill. 570; Ennor v. Thompson, 46 Ill. 214; West v. Reed, 55 Ill. 242; Seymour v. Mackay, 126 Ill. 341; Scanlan v. Scanlan, 33 Ill. App. 202; Linnell v. Lyford, 72 Me. 280; Schekell v. Hopkins, 2 Md. Ch. 89; Hicks v. Hicks, 5 Gill & J. 75; Baugher v. Merryman, 32 Md. 185; Batty v. Snook, 5 Mich. 231; Trull v. Skinner, 17 Pick. 213; Hoover v. Johnson, 47 Minn. 434; Youle v. Richards, 1 N. J. Eq. 534; 23 Am. Dec. 722; Remsen v. Hay, 2 Edw. Ch. 535; Shaw v. Walbridge, 33 Ohio St. 1; Hall v. Hall, 41 S. C. 163; 44 Am. St. R. 696, and note; Hyndman v. Hyndman, 19 Vt. 9; 46 Am. Dec. 171; Shoulder v. Bonander, 80 Mich. 531."

The question, therefore, is whether Rosenfield, by the contract of April 2, 1914, surrendered and conveyed his equity of redemption to the bank. This contract recites that, on that date, April 2, 1914, Rosenfield and his wife had made, executed, and delivered to the bank their instrument and covenant in writing, agreeing and covenanting that the warranty deed executed by them to the bank on March 26, 1913, should be thereafter an absolute conveyance of said property in fee simple. This contract reaffirms the fact that Rosenfield and his wife had conveyed their equity of redemption to the bank. The contract of April 2, 1914, recites that it is a collateral agreement to the "instrument and covenant in writing" whereby the equity of redemption was conveyed to the bank and said contract of April 2, 1914, provides, "that after a settlement with the creditors of second party (after closing or winding up of bankruptcy case, if this event should occur) first party agrees to reconvey said lot unto the second party or to whomsoever he might direct at the same figure, to wit, $500.00, etc." This contract is unambiguous and shows clearly that it was the intention of the parties that the property in question was conveyed in fee simple to the bank with the privilege, on the part of Rosenfield, to repurchase same. The testimony of Rosenfield in regard to this contract of April 2, 1914, is as follows:

"Q. Let me state the question first and then you can make your answer. You sold them the lot for a certain amount with the understanding after making settlement with your creditors you wanted to buy the lot back you were to reimburse the bank in full, wasn't that the agreement? A. Yes, sir."

There is no fraud alleged and none is shown in connection with the contract of April 2, 1914. There is nothing to show that the $500 consideration paid for said property is not adequate and there is nothing to indicate that the bank took any undue advantage of the mortgagor.

Rosenfield evidently considered the lot as the property of the bank for he did not claim to be the owner of it in his bankruptcy proceedings and certainly he should not be permitted to dodge the claims of his creditors by taking the position that the property belonged to the bank instead of himself when the bankruptcy proceedings were being conducted and then after the bankruptcy proceedings are closed, to come into court, after the creditors claims have been disposed of, and say that the property does not belong to the bank but is his. The defendant Rosenfield is estopped to assert his right to repurchase said property, under the contract, by his conduct. The evidence shows that he repudiated his right to repurchase said property and refused to have anything to do with same.

The judgment of the trial court is clearly against the weight of the evidence and the same should have been rendered for the plaintiff; the judgment is, therefore, reversed, and the cause remanded with instructions to render judgment for the plaintiff.

By the Court: It is so ordered.