WILLIAM A. THOMAS, ET UX. *v.* FRANCIS L. KLEMM, ET AL.

[No. 58, January Term, 1945.]

*Decided June 28, 1945.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and
MARKELL, JJ.

*J. Paul Schmidt*, with whom were *Weinberg & Green*
on the brief, for the appellants.

*T. Lyde Mason, Jr.*, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

William A. Thomas and wife, of Baltimore, prayed in
the Circuit Court for Baltimore County that a deed which
they executed on November 29, 1941, conveying their
dwelling on Rolling Road near Hebbville to Mrs. Dorothy
K. Warren, be treated as a mortgage, and that Mrs.
Warren, her husband, and her father, Francis L. Klemm,
who acted as her agent and attorney, be ordered to ren-
der an account of their equity in the property. The appeal
is from a decree dismissing the bill of complaint.

It appears from the record that in September, 1940,
appellants agreed to purchase the property from Klemm
for $4,250. Thomas, an employee of a firm of certified
public accountants, said he had no cash to deposit, but ex-
pected to receive a bonus of $500 from the company,
whereupon Klemm promised to obtain a mortgage for
$3,500 and to accept $500 in cash and a note for the
balance of the purchase price and the expenses of settle-
ment. When the deed was delivered by Mrs. Warren and
her husband on December 3, 1940, Thomas informed
them that he did not receive a bonus. However, he and
his wife executed a mortgage for $3,500 to Arlington
Federal Savings and Loan Association, and Mrs. Warren
accepted a judgment note for $877.49 for the balance
of the purchase price and the expenses. In February,
1941, Thomas sustained injuries in an automobile acci-
dent causing loss of employment and medical expenses,
as a result of which appellants were unable to make all
of the payments required by the mortgage. Klemm

warned that the building association threatened to fore-
close. Accordingly, on November 29, 1941, appellants
conveyed the property back to Mrs. Warren. The deed
was not recorded until March 16, 1942. On that day Mrs.
Warren entered suit on her note and obtained judg-
ment by confession for $947.68. About a year later
Klemm notified appellants to quit the premises on or
before June 30, 1943. In July Mrs. Warren and her hus-
band sold the property for $5,000.

Appellants allege that Klemm, while acting as agent
and attorney for his daughter, orally agreed that the
reconveyance was only for security, and that he would
make every effort to sell the property and pay them the
net proceeds after payment of the total indebtedness. The
doctrine is firmly established that a conveyance, although
purporting to be an absolute sale, and without any ac-
companying written defeasance, contract of repurchase,
or other agreement, may be treated in equity as a mort-
gage as between the original parties and against all per-
sons deriving title from the grantee who are not *bona
fide* purchasers for value and without notice, if it is
shown to have been intended merely as security for an
existing debt or a contemporaneous loan. *Hinkley v.
Wheelwright*, 29 Md. 341, 348; *Funk v. Harshman*, 110
Md. 127, 72 A. 665; *Obrecht v. Friese*, 148 Md. 484, 129
A. 657; *Oxenham v. Mitchell*, 160 Md. 269, 275, 153 A.
71; *Coster v. Arrow Building & Loan Ass'n*, 184 Md. 343,
41 A. 2d 83; 3 *Story, Equity Jurisprudence*, 14th Ed.,
Sec. 1364. Equity looks beyond the mere form of the
instrument, however skillful the disguise may be, and
seeks to discover the intention of the parties as to the
real character of the transaction. *Bailey v. Poe*, 142 Md.
57, 69, 120 A. 242. The law is clear that any evidence,
written or parol, showing the circumstances under which
a conveyance was executed or the object it was designed
to fulfill, is admissible to establish that the parties in-
tended it only as security. Hence, it is possible that the
question whether a mortgagor's conveyance of his equity
of redemption is an irrevocable transfer of title or merely

security for payment of money may be determined either by construction of instruments or correspondence or from parol evidence, although the parties knowingly and deliberately executed the instrument without fraud, accident or mistake, and no undue advantage was taken of the mortgagor by the mortgagee or other creditor in obtaining the conveyance. *Hinkley v. Wheelwright*, 29 Md. 341; *Baugher v. Merryman*, 32 Md. 185; *Coster v. Arrow Building & Loan Ass'n*, 184 Md. 343, 41 A. 2d 83. Extraneous evidence is admitted, not for the purpose of contradicting the terms of the instrument, but of raising an equity paramount to the mere form of the instrument. The court exercises jurisdiction to prevent fraud or oppression and to promote justice between the parties. *Booth v. Robinson*, 55 Md. 419, 451; *Peugh v. Davis*, 96 U. S. 332, 336, 24 L. Ed. 775.

In the case now before the court there are five reasons why the conclusion is inevitable that the reconveyance was intended by the parties as security, not as an absolute sale.

First: Mrs. Warren, who resides at Halethorpe, took back the title to the house on Rolling Road, not because she wanted to live there, or even to own it, but in order to prevent foreclosure. Appellants were allowed to contine as the occupants on condition that they would pay to Klemm $40 per month, beginning January 1, 1942.

Second: While it is argued that the parties spoke of the payments after reconveyance as "rent," and hence appellants must have become tenants, nevertheless, regardless of what the payments were called, the record shows (1) that the mortgage indebtedness was not extinguished, but the payments were turned over to the building association; and (2) that the indebtedness on the note was not extinguished. We recognize that the invariable test for determining whether a mortgagor's absolute deed of his equity of redemption actually constitutes a sale is whether the debt is extinguished. If the indebtedness is extinguished, the transaction is a sale, for if there is no obligation which the grantee can

enforce, the conditions are inconsistent with the idea of a mortgage security. If, on the contrary, the grantor continues to owe the money, the court will treat the deed as a mortgage and allow the debtor to redeem. *Ellis v. Purnell*, 167 Md. 687, 176 A. 270; *Coster v. Arrow Building & Loan Ass'n*, 184 Md. 342, 41 A. 2d 83.

Third: It appears that although the property increased considerably in value between September, 1940, when purchased, and November, 1941, when reconveyed, there was no cash consideration for the reconveyance. In *Conway's Ex'rs v. Alexander*, 7 Cranch 218, 237, 3 L. Ed. 321, 328, Chief Justice Marshall laid down the rule that the inclination of the court in case of doubt is to hold a debtor's absolute conveyance to be a mortgage, for the reason that "lenders of money are less under the pressure of circumstances which control the perfect and free exercise of the judgment than borrowers," and they frequently make the effort "to avail themselves of the advantage of this superiority, in order to obtain inequitable advantages." When a mortgagor conveys his equity of redemption to a mortgagee or other creditor, the court looks upon the transaction with suspicion and disfavor, and to sustain the conveyance as between the parties as a sale without right of redemption must find after careful examination into the circumstances that it was perfectly fair and free from the slightest taint of advantage taken by the mortgagee or other creditor. *Dougherty v. McColgan*, 6 *Gill & J.* 275, 282; *Sheckell v. Hopkins*, 2 Md. Ch. 89, 90; *Baugher v. Merryman*, 32 Md. 185, 192; *Day v. Davis*, 101 Md. 259, 269, 61 A. 576.

Fourth: Klemm, while acting as his daughter's agent and attorney, paid the Treasurer of Baltimore County the 1942 tax of $23.78 on the property, and charged this amount to appellants.

Fifth: Klemm paid $63.52 for repairs to the dwelling after the reconveyance, and likewise charged this amount to appellants.

The chancellor, in dismissing the bill of complaint, took the view that, even though the reconveyance was

executed merely as security, appellants should be denied relief in equity because Thomas apparently had no basis for his expectation of reciving a bonus other than rumors among the employees of the company, and he deceived Klemm by giving greater assurance of the possibility of receiving the bonus than there actually was, and hence he did not come into court with clean hands. The maxim that "he who comes into equity must come with clean hands" closes the doors of a court of equity to any person who has violated any of the fundamental principles of equity relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. The doctrine is rooted in the historical concept of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. While equity does not demand that its suitors shall have led blameless lives as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue. The maxim gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. Any wilful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the application of the maxim by the chancellor. *Schaeffer v. Sterling*, 176 Md. 553, 6 A. 2d 254; *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U. S. 806, 65 S. Ct. 993, 89 L. Ed. 1381. In this case Thomas was not represented by counsel, but relied throughout the transactions upon Klemm as Mrs. Warren's attorney. He merely expressed his belief that he would receive a bonus from his company. It cannot be said that he defrauded the attorney. Moreover, Mrs. Warren was afterwards willing to accept the judgment note, and she has not suffered any loss as a result of the expression of belief. It is an accepted rule that if the alleged wrongful conduct of a complainant appears not to have injured the defendant, the maxim cannot be successfully invoked. *First National Bank of Catons-*

*ville v. Carter,* 132 Md. 218, 103 A. 463; *Langley v. Devlin,* 95 Wash. 171, 163 P. 395, 4 A. L. R. 32.

We will, therefore, reverse the decree of the chancellor and remand the case for declaration of the reconveyance as a mortgage. Of course, a court of equity may decree an absolute conveyance to be a mortgage either (1) to allow the mortgagor to redeem or (2) solely to order the mortgagee to pay the amount to which the mortgagor is equitably entitled. *Thompson v. Banks,* 2 Md. Ch. 430; *Funk v. Harshman,* 110 Md. 127, 131, 72 A. 665. The property in this case was sold in 1943 for $5,000, and no objection was made to this sale. In our opinion a commission of $250 for making the sale is not unreasonable and can properly be allowed. After deduction of $3,108.57 for release of the mortgage, there remained a balance of $1,641.43. Out of this amount Klemm should have paid Mrs. Warren's judgment for $947.68, with interest to July 26, 1943. Instead, he ordered an attachment on the judgment. The chancellor should order Mrs. Warren to enter the judgment satisfied upon payment to her of $1,009.09. As there was no need for the issuance of an attachment, there should be no attorney's fee for collection. It appears that appellants paid to Klemm a total of $654.25 since the reconveyance, whereas Klemm paid the building association $674.21. Allowance should thus be made to Klemm for the payment of $19.96 additional to the amount received from appellants. He should also be credited with the sum of $23.78 paid to the County Treasurer for the tax for 1942, and $63.52 paid for repairs. The chancellor should decree that appellants are entitled to the balance of $525.08.

> *Decree reversed, and case remanded for the passage of a decree in accordance with the views expressed in this opinion, with costs to appellants.*